160 So.2d 601 (1964)
NATIONAL CAR RENTAL SYSTEM, INC.
v.
CITY OF NEW ORLEANS et al.
No. 1417.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
*603 Stahl & Sear, Morey L. Sear, New Orleans, for plaintiff-appellee.
Lancaster, King & Lecorgne, William McM. King, New Orleans, for plaintiff-appellee.
Lemle & Kelleher, Murphy Moss, New Orleans, and Paul E. Hurley, for Hertz Corp., defendant-appellant.
Alvin J. Liska, Siegfried B. Christensen, III, King F. Nungesser, Jr., New Orleans, and Robert Haik, for City of New Orleans et al., defendants-appellants.
Milling, Saal, Saunders, Benson & Woodward, David J. Conroy, New Orleans, and Omer F. Keubel, Jr., for Avis Rent-a-Car System Inc., defendant-appellant.
William F. Wessel, for H. T. Shallett, defendant-appellant.
Before McBRIDE, SAMUEL, CHASEZ and HALL, JJ., and HENRY F. TURNER, J. pro tem.
HALL, Judge.
This is an appeal by defendants pursuant to LSA-C.C.P. Art. 3612 from a judgment granting a preliminary injunction in favor of plaintiff. The case has not been heard on the merits.
National Car Rental System Inc., plaintiff herein, filed suit seeking an injunction prohibiting the defendants, City of New Orleans and the New Orleans Aviation Board, "* * * from giving effect to that certain option to renew contained in leases with Hertz and Avis, and their conducting negotiations with Hertz and Avis as to the terms and conditions of an extension to the present leases, and from entering into leases with Hertz, Avis, or any other party without following the provisions of Ordinance 2500 of the City of New Orleans, Mayor Council Series, and the Charter, and advertise for bids and award leases to the highest responsible bidders." Defendants filed exceptions and pleas of no right of action, no cause of action, estoppel and laches and a motion to dissolve the temporary restraining order which had been issued. Following a hearing on the rule nisi for a preliminary injunction and on these exceptions, pleas, and motion to dissolve, the District Court entered judgment denying the motion, overruling the exceptions and pleas and granting the preliminary injunction prayed for.
The facts are not in dispute. The record reveals that plaintiff, National Car Rental System, Inc., operates a nation-wide car rental business at most of the major airports in the United States. It ranks third in total business volume behind Hertz and Avis who rank first and second respectively in the same field. National is qualified to do business in Louisiana and is a taxpayer of the State of Louisiana and of the City of New Orleans.
On October 31, 1958, following advertisements of invitations for bids, the City of New Orleans and the New Orleans Aviation Board, its creature which operates New Orleans International Airport, entered into *604 separate contracts with Hertz and Avis whereby each of them was granted the use of certain premises and facilities (property of the City of New Orleans) at the airport for the operation of a rental car service. The consideration to be paid by Hertz and Avis was 10% of their annual gross receipts with minimum annual rental guarantees of fixed amounts. In addition each was obligated to pay a fixed amount per square foot for the office and parking space occupied by them.
In the two agreements the City is called "Lessor" and Hertz and Avis are each called "Lessee". The two agreements are identical in all respects material hereto and read in part as follows:

"Lessor does hereby lease, demise, and let unto Lessee the space in the new Terminal Building at Moisant International Airport at Kenner, Jefferson Parish, Louisiana, as described in the Form of Bid Proposal, Plans and Specifications, No. 986BP of the Bureau of Purchasing of the City of New Orleans, for the operation by Lessee, of a rental car service; same to be under the terms and conditions and for the considerations set forth in Lessee's bid dated October 8, 1958 and in the Form of said Bid Proposal, Instructions to Bidders, General Terms and Conditions, etc. which are annexed hereto and made part hereof.

"Lessee agrees to pay rental based on the percentage of gross revenues as set forth in its bid during the period of time stipulated, the guaranteed rentals totaling the sum of * * *." ($150,000.00 for Hertz and $108,000.00 in the case of Avis) (Emphasis supplied).
Article IX of the General Terms and Conditions of the contracts reads as follows:
"Article IXTerm
"The term of the contract for the concession shall be for a period of five (5) years commencing not later than November 1, 1958, provided however, Concessionaire is hereby given the option of renewing for a like term upon notice in writing of such intent at least six (6) months prior to the expiration of the basic term hereof. Rentals and guarantees for the period of the extension covered by said option shall be subject to negotiation between each operator and the Board and in no event shall the revenues to the Board be less than those called for in the basic term." (Emphasis supplied).
Hertz and Avis have operated under these contracts since November 1, 1958.
In the latter part of 1962 and again on June 25, 1963 National Car Rental System Inc. requested the Aviation Board to give it an opportunity to bid on a lease of a portion of the airport property for its business. (National now operates on private property across the highway from the airport, the income from which operation is substantial and from which the City receives no part). The chairman of the Board replied that the leases with Hertz and Avis would expire in 1963 at the end of their five year terms. He further stated that during the five year terms the Board was foreclosed from leasing to another car rental company, but expressed a hope that National would submit a firm offer to the Board at the expiration of the leases in 1963. The Aviation Board subsequently informed National that its attorney had submitted an opinion in which he advised that the Board was obligated to honor the options granted to Hertz and Avis and that Hertz and Avis had given notice of their exercise of the options. He further advised that under the terms of the contracts Hertz and Avis had exclusive rights to operate a car rental business on the airport property.
After a hearing before the Board at which National presented both oral and written arguments on the legal questions involved, the Board appointed a special *605 committee to study the matter further. This committee submitted a report recommending that the Board continue to negotiate with Hertz and Avis on the rentals and guarantees to be paid by them during the period of the extensions covered by their options. The committee's report was adopted by resolution of the Board. In this resolution the Board expressed a desire to see all three companies operating at the airport but accepted its attorney's opinion that the options granted Hertz and Avis precluded leases with any other concerns. In the face of this action, National filed these proceedings.
National's contentions may be summarized as follows: it contends that the options granted to Hertz and Avis to extend the terms of the contracts for an additional five years are invalid because the rentals and guarantees for the additional period are uncertain, being left subject to negotiation between the parties. National argues that since this is so any additional term granted to Hertz and Avis (after the rentals and guarantees are determined through negotiations) would in reality be a new and separate contract, and a new contract could be granted only after advertisement for competitive bids in accordance with City Ordinance No. 2500, M.C.S., adopted October 19, 1962.
Defendants contend that, as a stranger to the contracts, National has no right of action to challenge their validity. Defendants also contend that plaintiff is barred by estoppel and laches from prosecuting this suit.
These contentions were in our opinion properly dismissed by the Trial Judge who said:
"* * * * * *
"Plaintiff is a real estate tax payer in the City of New Orleans and is a competitor of Hertz and Avis. A taxpayer and competitor has a right of action to enjoin public officers from letting contracts without public advertising where this is required by law, no matter how infinitesimal or remote the amount of taxes involved. Handy v. City of New Orleans, 39 La.Ann. 107, 1 So. 593 (1887); Saxon v. City of New Orleans, 124 La. 717, 50 So. 663 (1909); Graham v. Jones, 198 La. 507, 3 So. (2) [2d] 761 (1941).
"Defendants contend that taxes are not involved because the benefits received from the leases in question go to the benefit of the Airlines under their own leases. Plaintiff disputes defendants' interpretation of the Airline leases. These Airline leases were not offered in evidence and are not before the Court. However, it is clear that under Article 14Sec. 31.6(g) of the Constitution of 1921, any surplus revenues of the Airport Board may be applied to the payment of General Obligation Bonds of the City of New Orleans. Plaintiffs (sic) therefore have a right of action.
* * * * * *
"The plea of estoppel is without merit. Plaintiff did nothing to cause defendants to take any action to their detriment. Plaintiff could bring no suit attacking the validity of the option clause until defendants exercised the option. Any suit brought before that time would have been premature as defendants may never have sought to exercise their option."
Defendants further contend that the options are valid and enforceable because under the contracts the consideration for the new term must be at least as great as that given for the old term and can only be revised upward in favor of the Aviation Board. Moreover, they argue that even if the options are invalid thus terminating the contracts as of November 1, 1963 there is no law prohibiting the parties from negotiating a new contract without competitive bidding. In this connection they argue that Ordinance No. 2500 M.C.S. upon which plaintiff must rely in order to maintain a *606 cause of action applies only to the lease of City-owned property while the contracts involved here are "concession contracts." Defendants also argue that even if Ordinance No. 2500 M.C.S. applies to contracts such as the ones before the Court that ordinance, being a general one, does not repeal Ordinance No. 680 M.C.S. and Ordinance No. 1547 M.C.S. which are special ordinances on the subject matter involved.
We are of the opinion, as was the trial judge, that the option clause in the contracts is clearly invalid because it is left to the will of the parties to determine the rent during the period of renewal. In this connection it makes no difference how the contracts are regarded, whether as leases, sales, concession contracts or as falling into some other contract classification. It is clear that the mere exercise of the options does not have the effect of extending the contracts for five years; the term can be extended only after further negotiation and agreement on the consideration, and when this is done a new and different contract comes into being. As pointed out by the trial judge:
"If this (the option clause) were legally valid, any public body required by law to advertise for bids in the letting of contracts could avoid the statute by providing in the original contract for options for renewal by negotiation between the parties, in lieu of public letting to the highest bidder after its expiration."
The fact that the rentals could only be revised upward is immaterial.
We now come to the question whether the parties are prohibited by law from negotiating a new contract without competitive bidding.
City Ordinance No. 2500 M.C.S. adopted October 19, 1962 provides in part:
"Section 1. That, on and after the effective date of this ordinance, no lease of property belonging to the City of New Orleans for a period of more than one (1) year shall be entered into unless the same has been awarded to the highest responsible bidder, after due advertisement and evaluation of bids received by the Bureau of Purchasing of the Department of Finance.
* * * * * *
"Section 4. That the Council, by a majority vote, may authorize leasing of property in a manner other than prescribed herein."
Since the Airport is "property belonging to the City of New Orleans" (See Sec. 9-301 of the City Charter) the first question raised is whether the contracts are leases. They are so denominated in the instruments themselves and there is no way the language of the instruments can be construed otherwise. In the instruments the "Lessor" (City) leases unto "Lessee" (Hertz and Avis) certain space (property of the City consisting of office and parking space) "for the operation by lessee of a rental car service", at a rental based upon a percentage of the annual gross revenues of the operation with a minimum annual rental. The contracts are no different from many commercial leases wherein a building or building space is leased for the operation of a specified business at a rental based upon a percentage of gross revenues.
In our opinion the contracts in question are "leases" within the meaning of Ordinance No. 2500 M.C.S.
Defendants contend however that even if the contracts be considered as leases of property belonging to the City they nevertheless are not amenable to the provisions of Ordinance No. 2500 M.C.S. because Article 14, Sec. 31.6 of the Louisiana Constitution LSA; LSA-R.S. 2:601 et seq; City Ordinance No. 1547 M.C.S.; and City Ordinance No. 680 M.C.S. give the Aviation Board authority to lease without competitive bidding.
Article 14, Section 31.6 of the Constitution provides:
"(D) The City of New Orleans, acting by and through the New Orleans *607 Aviation Board, with the approval of the City Council, is empowered to, and shall, impose, charge and collect, rates, fees, rentals and other charges for the use of the said Moisant International Airport and of the facilities constructed pursuant to this Section, * * * and for that purpose may contract for the operation of the said Moisant International Airport or lease all or any part thereof, to any person or corporation, public or private, upon such terms and conditions, and for such period of years as the New Orleans Aviation Board may deem advisable, after having received the approval of the City Council." (Emphasis added)
It is noted that this section of the Constitution does not of itself grant power to the Aviation Board to lease without competitive bidding, because it predicates this authority on the prior approval of the City Council.
LSA-R.S. 2:601 et seq. is a general statute passed in 1952 authorizing the creation of airports throughout the State. Insofar as it may pertain to leases of airport property it has been superceded as to the New Orleans Aviation Board by the constitutional provision supra adopted in 1960.
Ordinance No. 1547 M.C.S. adopted in 1958 is an ordinance ratifying the contracts in question. It provides as follows:
"Section 1. THE COUNCIL OF THE CITY OF NEW ORLEANS HEREBY ORDAINS, That the action of the New Orleans Aviation Board in executing the contract for the use of premises and facilities owned by the City of New Orleans at Moisant International Airport with the Hertz Corporation, a rental car agency, dated October 31, 1958 and Avis Rent-A-Car System, a rental car agency, dated October 31, 1958, be, and it is hereby accepted, approved, ratified and confirmed.
"Section 2. That said contract be, and it is hereby, accepted, approved, ratified and confirmed as the act for and on behalf of, the City of New Orleans.
"Section 3. That the Mayor of the City of New Orleans be, and he is hereby authorized, empowered and directed to evidence the foregoing acceptance, approval, ratification and confirmation of said actions of the New Orleans Aviation Board and said contracts by signing said contracts for and on behalf of the City of New Orleans.
"Section 4. That all terms and conditions of said contracts be, and they are hereby, recognized as binding on the City of New Orleans."
It is obvious that Ordinance 1547 does not affect the applicability of Ordinance No. 2500 because mere ratification and adoption of an invalid option does not make it valid. This ordinance had no vitality after the initial five year term of the contracts.
We now come to Ordinance No. 680 M.C.S. adopted April 12, 1956 which provides as follows:
"SECTION 1. THE COUNCIL OF THE CITY OF NEW ORLEANS HEREBY ORDAINS, That the New Orleans Aviation Board shall have the fullest power, authority and responsibility permitted by the Home Rule Charter of the City of New Orleans, consistent with ordinances heretofore adopted and with its contractual obligations with airline lessees of Moisant International Airport to:
"I. Administer, operate and maintain all municipal airports and aviation facilities.
"II. Represent the City in all technical matters pertaining to aeronautics, in consultation with state, national or international aeronautic offices or agencies.
"SECTION 2. That in the carrying out of its rights, duties and responsibilities said Board, acting through its *608 proper officers, shall have full power to execute contracts and grant concessions appertaining to airport property and operations, which contracts and concession grants, when duly executed by said Board, shall be binding upon and represent commitments regarding the same on the part of the City of New Orleans." (Emphasis supplied)
The fundamental issue in the case is whether Ordinance No. 680 which is a special ordinance covering the leasing of airport property by the Aviation Board has been repealed by the general ordinance No. 2500 which forbids all leases of City property without competitive bidding.
Defendants cite authorities for the proposition that when two statutes conflict the special statute will prevail over the general and in effect will be regarded as an exception to the general rule. However, as the trial judge pointed out, whenever a general law is intended to deal with the whole subject matter it by implication repeals all prior special laws. State ex rel. Broussard v. Henderson, 120 La. 535, 45 So. 430; Johnson v. Sewerage District #2, Caddo Parish, 239 La. 840, 120 So.2d 262. We are of the opinion that such is the case presented here.
Ordinance No. 2500 was evidently adopted pursuant to the mandate of Section 6-307(4) of the City Charter which provides:
"(4) Contracts for the leasing of property belonging to the City for periods of more than one year shall be subject to requirements which may be imposed by ordinance."
and is all embracing. It contains no exceptions and no saving clause.
It is our opinion that any lease of airport property must, under the provisions of Article 14, Section 31.6 of the Constitution, be approved by the City Council and the City Council by Ordinance No. 2500 has decreed in effect (subject of course to some future action taken by majority vote of the Council) that no lease exceeding one year in duration will be approved unless it has been entered into after competitive bidding.
It must be emphasized that this matter is on appeal from a judgment granting a preliminary injunction. Much latitude is to be given the trial judge in determining whether he will grant or refuse a preliminary injunction which is nothing more than an interlocutory decree designed to preserve and maintain the existing status pending a hearing on the merits. The trial judge's action will not be disturbed unless it appears that he has abused the discretion vested in him.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by appellants, all other costs to await final determination of the cause.
Affirmed.