644 So.2d 1156 (1994)
EMPORIA HOLDING COMPANY, INC.
v.
The CITY OF NEW ORLEANS, The Rivergate Development Corporation, and Harrah's Jazz Company.
EMPORIA HOLDING COMPANY, INC.
v.
The CITY OF NEW ORLEANS, et al.
CITY OF NEW ORLEANS
v.
EMPORIA HOLDING COMPANY, INC.
Nos. 94-CA-1274, 94-CA-1752 and 94-CA-1753.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 1994.
Writ Denied November 29, 1994.
Mack E. Barham, Robert E. Arceneaux, Matthew K. Brown, Barham & Arceneaux, Jacques F. Bezou, DeRussy, Bezou & Matthews, New Orleans, for appellant Emporia Holding Co., Inc.
J. Kelly Duncan, Edward H. Bergin, T. Michael Twomey, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellee Harrah's Jazz Co.
Roy J. Rodney, Charlotte G. Bordenave, Rodney, Bordenave, Boykin & Bennette, New Orleans, for appellee Rivergate Development Corp.
Avis Marie Russell, City Atty., Michael Botnick, Asst. City Atty., New Orleans, for appellee City of New Orleans.
Before KLEES, LOBRANO and PLOTKIN, JJ.
*1157 KLEES, Judge.
Plaintiff, Emporia Holding Company ("Emporia"), appeals from the trial court's judgment denying its request for permanent injunctive relief and granting defendants' rule to evict. We affirm.
On June 13, 1994, Emporia filed a petition seeking both preliminary and permanent injunctive relief against the City of New Orleans ("City"), the Rivergate Development Corporation ("RDC"), and Harrah's Jazz Company ("Harrah's"). Emporia sought to be restored to possession and occupancy of the New Orleans Municipal Auditorium in accordance with its 1988 five-year concession contract with the City which entitled Emporia to the exclusive sales of all food, beverages and merchandise in the facility. Emporia claimed it had a valid lease and that its possession was being disturbed by Harrah's, which had been granted a lease by the City to operate a temporary casino in the Municipal Auditorium.
Emporia's request for a preliminary injunction was heard June 23-24, and was denied. Emporia appealed. On August 18, 1994, while the appeal was pending, the City filed a rule to evict Emporia, which was consolidated with Emporia's petition for permanent injunctive relief. Harrah's intervened in the rule to evict. After a hearing on August 24-25, 1994, the trial court upheld Harrah's right to possession, denied Emporia's request for a permanent injunction, and granted the City's rule to evict. Emporia appealed, and we granted Emporia's motion to consolidate its appeal with the pending appeal from the denial of the preliminary injunction.
As the issue of the preliminary injunction is now moot, we will consider only the trial court's decisions evicting Emporia and denying Emporia permanent injunctive relief.

Eviction
Emporia contends that its contract with the City, which ran from June 3, 1988, until June 4, 1993 and contained an option to renew for five years, was validly renewed by means of an April 28, 1993 letter from Pearl Cantrelle, the City's Director of Property Management, to David Tardo, the president of Emporia. In the letter, Ms. Cantrelle stated that she was confirming the City's option to renew the Emporia lease for an additional five years.
The City, as grounds for eviction, asserted that this purported renewal of the lease was unauthorized and invalid, and alternatively, that Emporia had breached the lease contract by failing to pay the stipulated annual minimum rentals and by failing to live up to certain other obligations under the lease. In granting the rule for eviction, the trial judge indicated that he believed the purported renewal by Ms. Cantrelle was unauthorized and therefore invalid. We agree.
Ms. Cantrelle had no authority to renew the lease under City Ordinances Nos. 2500 and 2870, and under Section 6-307(1) of the City's Home Rule Charter. Section 1 of Ordinance No. 2500, as amended by 2870, provides:
That, on and after the effective date of this ordinance, no lease of property belonging to the City of New Orleans for a period of more than one (1) year shall be entered into unless the same has been awarded to the highest responsible bidder, after due advertisement and evaluation of bids received by the Bureau of Purchasing of the Department of Finance and after approval by the council. (Emphasis in original).
Section 2 of Ordinance No. 2500, as amended by 2870, provides:
That, any lease on such property for a term of one (1) year or less, but which grants to the lessee the option of renewal thereof for an additional term, which together with the primary term, would total more than one (1) year, shall be subject to the provisions of Section 1 hereof.
Section 3 of Ordinance No. 2500, as amended by 2870 provides:
That, any lease of property belonging to the City entered into in violation hereof shall be invalid and unenforceable against the City (Emphasis supplied).
Emporia's original contract was bid upon and authorized by the City Council in accordance with this ordinance. However, the five-year renewal was not mentioned in City Council Motion 88-137, which authorized the Emporia *1158 contract. Further, the renewal was not authorized by the City Council prior to Ms. Cantrelle's April 28 letter to Emporia.
Emporia argues that Ordinance No. 2500 applies only to the grant of a new lease, not to a renewal. The language of the ordinance itself is unclear on this point. However, in National Car Rental Systems, Inc. v. City of New Orleans, 160 So.2d 601, 606 (La.App. 4th Cir.1964), we held that an option to renew which requires renegotiation of the terms to apply during the renewal period is in reality a new contract, and as such it must be approved by the City Council under Ordinance No. 2500. In the instant case, Emporia's lease does not state that the renewal is to be on the same terms and conditions as the original lease. Moreover, because the original lease provides for both a monthly rental (based upon a percentage of gross sales) and minimum annual rentals in specified amounts which are different for each year of the lease, the terms would necessarily have to be renegotiated for the five years of the renewal period. Under these circumstances, we hold that the renewal required City Council approval to be valid under Ordinance 2500.
In addition, the renewal is invalid because of the absence of the Mayor's signature. Section 6-307(1) of the Home Rule Charter provides, in part: "All formal written contracts to which the City is a party shall be signed by the Mayor or, under his authorization, by the Director of Finance or the Director of Property Management." (Emphasis supplied). Pursuant to this section, former Mayor Barthelemy in a memo dated April 12, 1989, authorized the Director of Property Management to sign on behalf of the City all real estate leases to which the City is a party, except for "any real estate lease which extends past one year or includes language which allows for a renewal past one year." Again, Emporia argues that these provisions refer only to new leases and not to extensions or renewals.
Emporia's argument on this point is defeated by former Mayor Barthelemy's testimony at the hearing, when he stated that it was not his intention in the April 29, 1989 memorandum to authorize the Director of Property Management to execute multi-year contracts on behalf of the City, but only those contracts which were less than twelve months in duration. Moreover, Mayor Barthelemy stated that he never authorized Pearl Cantrelle or any other Director of Property Management to bind the City to multi-year leases. Specifically in regard to the Emporia renewal, Mayor Barthelemy testified that he instructed Ms. Cantrelle to prepare the renewal documents, but that he expected her to submit them for his signature. He therefore did not authorize her to sign them on his behalf.
We conclude, as did the trial court, that Pearl Cantrelle had no authority to renew the Emporia lease because the multi-year renewal was not approved by the City Council. The lease was therefore invalid and unenforceable under § 3 of Ordinance No. 2500. Since there was no renewal, the lease continued on a month-to-month basis after June 4, 1993, and the City had the right after proper notice to have Emporia evicted.
Emporia makes the final argument that even absent actual authority, Ms. Cantrelle had the apparent authority to renew the lease. In the instant case, if Emporia can prove that Ms. Cantrelle had apparent authority upon which Emporia relied to its detriment, Emporia may be entitled to damages against the City, which are not the subject of this proceeding.

Denial of Permanent Injunction
In light of our holding that the Emporia contract was not validly renewed, the trial court's denial of Emporia's request for permanent injunctive relief is clearly proper. The trial court's granting of Harrah's request for declaratory relief recognizing Harrah's right to possession is also proper. At trial and on appeal, Harrah's argued that as a third party to the Emporia contract, it is protected by the Public Records Doctrine. The parties stipulated at trial that Emporia's contract was not recorded when Harrah's recorded its Temporary Casino Lease on March 15, 1994. Therefore, according to Harrah's, the Temporary Casino Lease is not subject to Emporia's claimed pre-existing lease and Emporia has no claim against Harrah's. *1159 Harrah's contends that it would be entitled to possession pursuant to the Public Records Doctrine even if the Emporia contract were valid against the City.
In response, Emporia argues that as a sublessee, Harrah's cannot by virtue of the Public Records Doctrine gain any greater rights than those of its sublessor, the RDC. Emporia further argues that because the RDC in its lease with the City expressly assumed all preexisting encumbrances upon the property, the RDC is bound by the Emporia lease (a preexisting encumbrance), and Harrah's is also bound. For its part, Harrah's disputes that the RDC contract (and particularly the language pointed to by Emporia) contains an express assumption of preexisting encumbrances.
Because we find that the Emporia lease was not validly renewed, we need not consider the issue of the Public Records Doctrine and its application in the instant case. The Emporia lease terminated in June of 1993 and therefore did not constitute a preexisting encumbrance on the property in March of 1994 at the time the RDC lease was signed.
Emporia's argument is therefore moot.
Accordingly, for the reasons given, we affirm the judgment of the trial court. All costs are to be borne by appellant.
AFFIRMED.