| iKLEES, Judge.
On March 14, 1994, the defendant, Audrey Bradley was injured in a car accident involving a New Orleans Police Officer. After an eight day trial, the City of New Orleans was found to be 75% liable for the injuries Ms. Bradley sustained. The judgment was for approximately 3.9 million dollars, plus interest. After judgment, the City of New Orleans filed an appeal. However, before the appeal could be heard, the parties entered into a settlement agreement. At the time of this settlement the value of the judgment exceeded 5.5 million dollars. The settlement called for 4.1 million dollars to be paid to Audrey Bradley. $850,000 was to be paid by April 30, 1994, and the remaining 3.25 million dollars to be paid pursuant to a payment plan detailed in the agreement. The $850,000 was *253 paid to Ms. Bradley after the City Council by unanimous vote passed two ordinances to allocate money for this payment and were put on notice that the balance of the settlement amount would be due within the period of time specified in the settlement agreement.
A new Mayor for the City of New Orleans took office in August of 1994, and the new City Attorney he appointed reviewed the terms of the settlement agreement. She .filed a petition to have the settlement set aside and to have Ms. Bradley return the $850,000 she had received to date. Audrey Bradley filed a Motion for Summary Judgment to have the settlement agreement declared valid and enforceable. On April 26, 1996, the trial court concluded that there were no genuine issues as to any material fact and that under the law, the settlement agreement between the City of New Orleans and Audrey Bradley was valid and enforceable. The City of New Orleans appealed to this Court.
|2The City of New Orleans assigns as error the following: 1. the District Court erred in granting Summary Judgment because there are genuine issues of material fact and that 2. the District Court erred in granting Summary Judgment as a matter of law.
An appellate court must ask two questions when reviewing summary judgments on appeal: 1) whether there is any genuine issue of material fact and 2) whether the mover is entitled to summary judgment as a matter of law. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991), appeal after remand, 94-0909 (La.App. 1 Cir. 3/3/95) 653 So.2d 612, writ denied, 95-1504 and 95-1509 (La.9/22/95) 660 So.2d 480; Hackett v. Schmidt, 630 So.2d 1324 (La.App. 4 Cir.1993), unit denied, 94-0266 (La.4/4/94) 635 So.2d 1123. A genuine issue exists when it is essential to the outcome of the ease and a material fact is one which would matter at a trial on the merits. Monaghan v. Caserta, 95-0718 (La.App. 1 Cir. 12/15/95) 666 So.2d 397.
Here, the defendant provided affidavits from the Mayor and City Attorney for the City of New Orleans at the time the settlement agreement was signed. Both stated that the City Attorney signed the agreement with the Mayor’s knowledge and permission. The current City Attorney filed an affidavit stating that the City Attorney does not have the authority to sign contracts for the City. However, The Home Rule Charter of the City of New Orleans in Section 4-206 states that in part:
Section 4-206. Powers and Duties
(1) Executive and Administrative Powers. The Mayor shall be the chief executive officer of the City. He shall have the power and shall be required to:
(i) Sign contracts, bonds or other instruments requiring the assent of the City except those which the Director of Finance or other officer is authorized to sign.
|3The testimony of the former Mayor and City Attorney indicates that the City Attorney was granted the authorization required by the City Charter to sign a settlement agreement with Audrey Bradley.
The current City Administration argues that the grant of authorization to sign on behalf of the City cannot be given solely by the Mayor, but must be granted by either State statute or City ordinance. The City cites Emporia Holding Company, Inc. v. The City of New Orleans, 94-1274, 94-1752, 94-1753 (La.App. 4 Cir. 10/27/94), 644 So.2d 1156, writ denied, 94-2766 (La.11/29/94) 646 So.2d 406; and New Orleans Aviation Board v. General Aviation Corporation, 621 So.2d 892 (La.App. 4 Cir.1993), writ denied, 629 So.2d 394 (La.1993). to support their theory. Neither case actually supports the City’s position. In the Emporia case, the Director of Property Management granted a lease extension to Emporia Holding Company contrary to specific language in the City Charter. The issue in the case was not whether the Director of Property Management was allowed to sign on behalf of the City, but whether the City was required to honor a lease the Director entered into contrary to the City Charter. This Court held that the City should not be bound. However, it was acknowledged by the City that the Mayor had granted the Director of Property Management the authority to sign any leases for one year or less on behalf of the City and *254 that award of authority was not contested by the City or challenged by this Court.
In New Orleans Aviation, LSA-R.S 2:351 specifically designated the Aviation Board Chairman as a person authorized to sign under the requirements of Section 4-206 of the New Orleans City Charter. This statute was passed to make it clear that even though the Aviation Board Chairman is not a typical department head under the Mayor, the Chairman is still eligible to sign contracts on behalf of the City. There is no language in the City Charter that denies the Mayor the right to delegate this authority without state or city legislation.
LLa.C.C. Art. 11 requires that words be given their prevailing meaning. The most logical conclusion from a reading of Section 4-206 would indicate the Mayor was responsible for designating or authorizing others to sign on his behalf.
The City of New Orleans also challenged the settlement because of the negative connotations surrounding the agreement. Summary judgments are generally inappropriate in cases involving questions of motive, intent, good faith, knowledge and malice. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.1994) 639 So.2d 730; appeal after remand, 96-1837 (La.9/27/96) 680 So.2d 1163, reh. denied 96-1837 (La. 11/8/96) 683 So.2d 258. The new City Administration argues that some “11th hour” dealmaking occurred between the former Administration and Ms. Bradley that the Court should investigate, or at the very least allow this matter to be examined at trial. The City, provides no real support for this allegation except for the late date of the affidavit provided by Sidney J. Barthelemy, the former Mayor of New Orleans. They give significant weight to the fact that the information contained in the affidavit is not documented elsewhere in the City Attorney’s files and that the nature of the affidavit is the type for which there can be no countervailing affidavit. Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits or depositions, reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Leflore v. Coburn, 95-0690 (La.App. 4 Cir. 12/28/95) 665 So.2d 1323, writ denied, 96-0411 and 96-0453 (La.3/29/96) 670 So.2d 1234. In the present case, the former Mayor provided an affidavit stating that he had granted permission to the City Attorney to settle with Ms. Bradley. No matter how it is examined, that evidence cannot be construed in a light favorable to the City of New Orleans in the present case. The City did not provide any evidence showing why the statements made by the former Mayor or City Attorney would be untrue.
IsBased on the above evidence, we conclude that the Mayor of the City of New Orleans had granted his authority to the City Attorney to reach a settlement with Audrey Bradley. As no material issues of law are in dispute in this ease, the trial court was correct in granting the defendant’s Motion for Summary Judgment.
The City of New Orleans also argues that the settlement amount was not in the best interest of the City. However, the original judgment rendered by Judge Bernette Johnson was for the amount of 3.9 million dollars plus interest. At the time the settlement agreement was signed, judicial interest on the judgment put it at over 5 million dollars. Therefore, a settlement of 4.1 million dollars was indeed in the City’s interest at that time. The City of New Orleans contends that the settlement is outlandish and inappropriate, but the City Council unanimously ratified the settlement by providing the initial $850,000 to make the first agreed upon payment to Ms. Bradley and prepared to budget the funds to make the payments necessary to further satisfy the requirements of the settlement agreement.
We conclude, therefore, that since the settlement was ratified by the members of the City Council directly elected by the residents of the City, this agreement must be in the best interest of the City of New Orleans.
The Appellee filed a cross-appeal requesting that this Court issue sanctions against the City of New Orleans for filing a frivolous law suit. This Court will not apply sanctions in this case because we believe that the City honestly felt that there were materi *255 al issues in dispute and that this case was filed in pursuit of those issues.
Accordingly, for the reasons given, we affirm the judgment of the trial court.

AFFIRMED.

LOBRANO, J., concurs.
ARMSTRONG, J., dissents with reasons.