11 GASKINS, J.
The City of Monroe (City) appeals a trial court judgment finding that its director of operations for the Monroe Civic Center, Roger Cloman, had apparent and implied authority to enter into a contract with National Linen Service (National Linen). National Linen answered the appeal, seeking an increase in attorney fees for work done on appeal. For the following reasons, we vacate the trial court judgment and remand for further proceedings.
FACTS
National Linen had various service agreements with the City of Monroe to supply linens for the Monroe Civic Center (Civic Center) dating back to 1989. On July 8, 2002, a contract with a term of five years was signed by Roger Cloman, who was then the director of operations for the Monroe Civic Center. The contract provided that if the Civic Center was unhappy with National Linen’s service, the company was to be informed and given 30 days in which to remedy the problem. At the end of that time, if an acceptable resolution could not be reached, National Linen would consider the contract to be abrogated.
The Civic Center took delivery of linens under this contract for approximately one year and paid the bill timely. In September 2003, when the route driver made the linen delivery, he was given all the linen held by the Civic Center and told that the City would be doing business with another company. When officials with National Linen inquired, Chris Walter, the new di *915 rector of the Civic Center, informed the company that a cheaper supplier had been found. After National Linen sent a demand letter | ¡Jo the City for damages arising from the breach of the contract, the City contended that Mr. Cloman had no authority to sign the contract with the plaintiff. The City’s position was that only the mayor had authority to sign contracts on behalf of the City, after review by the director of administration.
National Linen filed suit against the City of Monroe for breach of contract, claiming stipulated damages equal to the value of the contract for the approximately four years remaining on its term.[1] At the hearing, the City contended that National Linen was aware that Mr. Cloman did not have authority to enter into the contract. In support of this claim, a series of letters were introduced between the City and National Linen in 1994.
In the first letter, the general manager of the Civic Center informed National Linen that a 1989 agreement making a prior contract self-renewing had been signed by unauthorized personnel (Mr. Cloman, who was not then the director of operations) and would be terminated. National Linen replied, “We are concerned with the fact that your institution denied any commitment to our service agreement by stating that an unauthorized person signed our agreement. If this is true, why have you done business with us for the last five or more years.”
Jerry Medaries, who was then the director of operations for the Civic Center, wrote to National Linen that the City had agreed to honor the 13contract. The letter continued, “When the time comes to renew this contract it must be brought to the main office and signed by a person who is authorized to sign rental and lease agreements.” After that series of letters and before the execution of the contract at issue here, Mr. Cloman was promoted to director of operations.[2]
Following a hearing below, the trial court found that Mr. Cloman was clothed with apparent authority to enter into contracts with National Linen in 1996, 1997, and 2002. The court found that his title as director of operations was indicative of a great deal of authority. The court noted that Mr. Cloman was on site at the Civic Center directing the daily operations and that his name was on the door indicating his position. The court observed that Mr. Cloman had entered into several contracts in the past, which were honored by the City. According to the court, it was not until someone thought they could get a better deal that the validity of the contract and Mr. Cloman’s authority to sign were challenged. The court stated, “It seems to me to be a bad situation where you take advantage of a contract as long as it’s good but if you find a better deal then you repudiate the contract.” The court signed a judgment in favor of National Linen, awarding the company $22,277.64 in damages and $10,611.00 in attorney fees. The City appealed the judgment, arguing that the trial court erred in finding that Mr. Cloman was clothed with apparent authority to sign the contract at issue here. The *916 City argues that agency is never presumed and must be created by express or implied appointment. It points out that, |4although in 1994 the City informed National Linen that a contract had been executed by an unauthorized person, and although the City later decided to honor that agreement, National Linen was put on notice that in the future, contracts must be brought to the main office to be signed by a “person who is authorized to sign rental and lease agreements.”
The City maintains that National Linen had a duty to inquire regarding the authority of Mr. Cloman to sign the contract. The City contends that National Linen assumed that Mr. Cloman had authority to sign contracts even after being told that he did not. The City argues that the burden of proving apparent authority is on the party seeking to bind the principal and National Linen failed to satisfy its burden in this case.
National Linen argues that Mr. Cloman was clothed with implied or express authority to execute a service agreement with the plaintiff. The company also argues that the 1994 contract signed by Mr. Cloman was honored by the City as were subsequent agreements. According to the plaintiff, this constitutes ratification.
At the trial court level, National Linen was awarded attorney fees. The plaintiff has now answered the appeal, requesting additional fees in the amount of $5,236.65 for defending against this appeal.
We agree with the city that, in order for a contract to be enforceable, the person who signs the contract on behalf of the city must have express authority to do so. The power to sign city contracts is granted by state ^statute or by charter.[3] In the case before us, it was National Linen which sought to enforce the contract, and the burden is upon National Linen to prove the efficacy of the contract.
If the contract is found not to be enforceable because it was not properly signed, any actual damages suffered by National Linen might still be recoverable. See Emporia Holding Company, Inc. v. City of New Orleans, 94-1274, 94-1752, 94-1753 (La.App. 4th Cir.10/27/94), 644 So.2d 1156, writ denied, 94-2766 (La.11/29/94), 646 So.2d 406, regarding issues of home rule charter and apparent authority to enter into contracts on behalf of a city.[4]
La. C.C.P. art. 2164 provides that an appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. It is well settled that an appellate court is empowered under this article to remand a case to the trial court for the taking of additional evidence where it is necessary to reach a just decision and to prevent a miscarriage of justice. Such a remand without decision requires the existing judgment to be set aside. Anderson v. Casualty Reciprocal Exchange, 602 So.2d 282 (La.App. 2d Cir.6/24/92). Because the issues outlined above were not considered by the parties or the trial court, we vacate that decision *917 and remand this matter for further proceedings in accordance with this opinion.
I «CONCLUSION
For the reasons stated above, we vacate the trial court judgment and remand this matter to the trial court for further proceedings. Costs are assessed against National Linen.
VACATED; REMANDED.

. National Linen is located in Shreveport and launders all linens in Caddo Parish. After National Linen filed suit in the First Judicial District Court for damages arising from breach of contract, the City of Monroe filed an exception of improper venue and alternatively a motion to transfer under the doctrine of forum non conveniens. The exception and motion were denied by the trial court and that decision was affirmed by this court in National Linen Service v. City of Monroe, 39,199 (La.App. 2d Cir.12/15/04), 889 So.2d 1186.

. Mr. Cloman is no longer employed as the director of operations for the Monroe Civic Center.

. The authority to sign contracts in a Mayor and Alderman form of government is set forth in La. R.S. 33:404(A)(4). In a Home Rule Charter, the charter is required to be promulgated by filing with the secretary of state and the clerk of court for the parish in which the municipality is located, as well as by placing a copy in the archives of the local government to remain as its permanent record. La. R.S. 33:1395 and 1395.3.

. If a valid contract exists, then damages are assessed by the contract. If there is not a valid contract, an award for actual damages may be due if there was apparent authority to act by Mr. Cloman.