614 So.2d 748 (1993)
Melvin E. OGBURN, Plaintiff-Appellee,
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 24524-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
Rehearing Denied March 25, 1993.
*750 Gerald N. Jones, City Atty., Lydia M. Rhodes, Asst. City Atty., Shreveport, for appellant.
Booth, Lockard, Politz, LeSage & D'Anna by Bennett L. Politz, Shreveport, for appellee.
Before MARVIN, VICTORY and BROWN, JJ.
MARVIN, Chief Judge.
In this action for mandamus, we affirm a judgment ordering the City of Shreveport to reinstate retirement benefits for a retired policeman to whom the City paid almost $1,400 monthly beginning in 1983 before reducing the monthly benefits to about $50 when the retiree reached age 50 in 1991.
In the mandamus action that resulted in the judgment here appealed by the City, the City questioned for the first time the legality of a 1991 decision by the Board of Trustees of the Police Pension and Relief Fund of the City that the policeman's full benefits should not have been reduced and should be restored. The retired policeman instituted the mandamus action about 70 days after the Board of Trustees made the decision in his favor after a hearing. The mandamus action was instituted when the City did not comply with the Board's decision or seek judicial review of that decision. The trial court held a hearing before pronouncing its judgment in the mandamus action.

THE ISSUES
The issues concern the finality of the Board's decision and whether and when the City, not having earlier sought judicial review of the Board's decision, may question the legality of that decision as a defense to mandamus.
The legal issues stem from the fact that the policeman, Melvin Ogburn, began serving in the elected position of Chief of Police of the Town of Greenwood in 1984, shortly after he retired as a Shreveport policeman at age 41 in 1983. Before and after his 50th birthday in 1991, he has continued to serve as the Greenwood Chief of Police and is required to contribute to the statewide Municipal Police Employees' Retirement System (MPERS), a system in which the City of Shreveport Police Pension and Relief Fund merged in 1982.
A 1982 contract between Ogburn and the City concerning the effect of the merger on the policeman's retirement benefits provided that Ogburn would not lose any benefits because of the merger and designated, as directed by the MPERS statute, the Board as the "entity responsible for resolving disputes that arise under the contract." LRS 33:2370.1 (redesignated as LRS 11:3731 by Acts 1991, No. 74).
LRS 33:2355 (now LRS 11:3715) provided that the Board's decision on applications "for relief or pensions under this Subpart... shall be final and conclusive and not be subject to review or reversal except by the board." In the 1982 contract, Ogburn and the City agreed that the Board's decision "made in good faith shall be final and binding on the parties."
The dispute that was brought to the Board concerned the effect of the merger statutes and the 1982 contract between Ogburn and the City on Ogburn's circumstance that the age at which he becomes eligible to elect to retire under MPERS is age 50 and that he is not eligible to elect retirement while he serves as a chief of police of a municipality and makes mandatory contributions to MPERS.

*751 DISCUSSION
When Ogburn reached age 50 on August 11, 1991, the City reasoned that Ogburn had become eligible to retire, and thus to receive retirement benefits, from MPERS, which system credited Ogburn's 20 years service as a Shreveport policeman. The City reasoned that once Ogburn became "eligible to receive benefits from MPERS," the City was statutorily authorized to reduce its monthly payments of $1,387.51 by the amount that Ogburn was eligible to receive from MPERS ($1,337). LRS 11:2225 (formerly LRS 33:2378), partially quoted infra. The City continued to pay Ogburn the difference of $50.51 based on the contractual guarantee to Ogburn as a result of the local Fund's merger with MPERS.
Ogburn disputed the City's interpretation, contending that he was not eligible to receive benefits from MPERS as long as he served as a chief of police and made the mandatory contributions to MPERS.
The dispute was presented to the Board of Trustees for the Fund, the entity designated in the 1982 contract between Ogburn and the City to resolve such disputes. This nine-member board, after a hearing, voted 6-3 on September 10, 1991, to restore Ogburn's retirement benefits "until such time as he receives a benefit from MPERS." The minutes of the meeting state:
A special meeting was called to discuss the interpretation of the "guarantee of benefits" for retiree Melvin Ogburn. Mr. Ogburn retired from the Shreveport Police Department on February 12, 1983. He has been paid a local guaranteed benefit of $1,387.51 since retirement. Upon attainment of age fifty, the Pension Manager reduced Mr. Ogburn's benefit to $50.51 per month, using the interpretation that at age fifty he should begin receiving a benefit from [MPERS] in Baton Rouge. Assistant City Attorney Lydia Rhodes gave a legal opinion that the City should not pay a full guarantee to the retiree subsequent to age fifty. After much discussion by the Board, Mr. Derrrick moved and was seconded by Mr. Greene that the administrator of the fund should restore the local benefit of Mr. Ogburn until such time as he receives a benefit from MPERS. The motion passed 6-3. Henry Burns, Director of Finance, stated that he could not continue to pay the local benefit to Mr. Ogburn, considering his fiduciary responsibility. (Emphasis added.)
Burns, the Director of Finance mentioned in the minutes, was one of the three members voting against the motion.
The City did not comply with or seek judicial review of the Board's decision. About 70 days later, on November 20, 1991, Ogburn brought his mandamus action to compel the City, through its Mayor, Director of Finance and/or Pension Administrator, to comply with the Board's order or ruling. Ogburn claimed the order was "final, definitive and res judicata" under both LRS 11:3715 and the 1982 contract, and "created a ministerial duty" which could be enforced by a writ of mandamus.
As a defense to mandamus, the City contended the Board's decision was arbitrary, capricious and violative of the Board's fiduciary duty.
Ogburn argued that the City was precluded from challenging the merits or the reasonableness of the Board's decision as a defense to the mandamus action because the City either did not have, or did not timely exercise, the right to seek judicial review of the decision. Ogburn's claim that the decision was final and was not subject to judicial review rested both on LRS 11:3715 (formerly LRS 33:2355), which provides that the Board's "decision on applications shall be final and conclusive and not be subject to review or reversal except by the board," and on the 1982 contract between Ogburn and the City, in which the parties designated the Board as the entity to resolve disputes arising under the contract and agreed that the Board's decision "made in good faith shall be final and binding on the parties." Ogburn's argument did not specify or suggest the applicable delay for the City to seek review.
The City claimed the Board's decision was reviewable under the Administrative Procedure Act, LRS 49:951 et seq., notwithstanding *752 that LRS 11:3715 and the 1982 contract designated the Board's decision as final and not subject to judicial review. Neither the litigants nor the trial court squarely addressed the applicability of the Administrative Procedure Act or the timeliness of the City's challenge to the Board's decision.
The trial court heard testimony from Ogburn, several members of the Board and the city's pension manager concerning the Board's decision and the merits of the dispute. Based on the 1982 contract, and without ruling on the merits of the dispute, the trial court found that the Board's decision to restore Ogburn's full benefits imposed a ministerial duty that was enforceable by writ of mandamus.
On appeal, the City contends the trial court should have reviewed the lawfulness or correctness of the Board's decision instead of merely "rubber stamping" it, and should have found that Ogburn was not entitled to continue receiving full benefits after age 50. Apparently abandoning its earlier argument that the Board's decision was reviewable under the Administrative Procedure Act, LRS 49:964, the City asserts on appeal that "there is no mention in any statute of the method of appealing any unlawful decision of the arbiter of disputes under [the 1982] contract." Consequently, the City argues, its failure to "appeal" the Board's decision was not a bar to the trial court's consideration of the merits of the dispute as a defense to the mandamus action.
We conclude the City had the right to seek judicial review of the Board's decision under the Administrative Procedure Act but did not exercise it timely, and that the trial court properly issued the writ of mandamus without ruling on the merits of the dispute. LRS 49:964; CCP Art. 3863; Buras v. Board of Trustees of Police Pension, 367 So.2d 849 (La.1979); Robinson v. City of Baton Rouge, 566 So.2d 415 (La. App. 1st Cir.1990).

THE MERGER
On January 1, 1983, about a month before Ogburn retired, the local Fund merged with MPERS. As authorized by LRS 33:2370.1(B) (now LRS 11:3731(B)), the City contracted with Ogburn in October 1982, guaranteeing that the merger would not cause him to lose any retirement benefits which he would have realized under the Fund.
Section 2370.1(B) allowed the contracting parties to designate "the entity that will be responsible for administering benefits and resolving disputes that arise under the contract." Ogburn and the City designated the Board of Trustees of the local Fund as that entity, and agreed that "the decision of said Board ... made in good faith shall be final and binding on the parties signatory hereto."
Under LRS 33:2378(A)(11) (now LRS 11:2225(A)(11)(a)), the City was obligated to "pay its regular retirement benefits to any employee who takes a deferred retirement with sixteen, twenty, or twenty-five years of service credit prior to reaching age fifty... until the retiree reaches the age of fifty ... and is eligible to receive a benefit from [MPERS]."
The issues here presented were presented to the Board in 1991. That Board has nine members: the mayor, the chief administrative officer, the chief of police, the director of finance, and five present or former members of the Fund. The Board members voting against the motion heretofore discussed were the mayor, the chief administrative officer and the director of finance.
After hearing testimony in the mandamus action from Ogburn, two members of the Board who voted in Ogburn's favor, and the City's pension manager, who was also present at the September 10 Board meeting, the trial court made the writ peremptory. The court found that the Board's decision was binding on the City based on the 1982 contract and did not address the merits of the dispute. The court ordered the City to reinstate Ogburn's benefits of $1,387.51 per month, to pay about $10,000 in accrued past benefits, and to continue paying $1,387.51 per month "until such time as plaintiff is eligible to receive a benefit from [MPERS], that is, when plaintiff *753 no longer is a contributing member of [MPERS]."

RESOLUTION
In its third assignment, the City contends the trial court erred in making peremptory a writ of mandamus against a governmental body as opposed to an individual officer or employee of the governmental body. This assignment of error is unfounded, as the trial court's orders are directed to "the City of Shreveport, through its Mayor, Finance Director and/or Pension Administrator." Our emphasis.
The issue whether the trial court erred in ordering the City to comply with the Board's decision without reviewing the merits of the dispute or the reasonableness of the Board's action turns on whether the City had and timely exercised the right to judicial review of the Board's decision. If the Board's decision was not subject to judicial review, or if review was available but was not timely sought by the City, the Board's decision was final and not reviewable by the trial court in the mandamus action. See and compare Robinson v. City of Baton Rouge, supra.

THE RIGHT TO SEEK REVIEW
The right to judicial review of an administrative decision is part of the constitutional right to due process of law and cannot be denied by a statute such as LRS 11:3715 (formerly LRS 33:2355) providing that the administrative body's decision is "final" and not subject to judicial review. LSA-Const. Art. 1, § 22; Buras v. Board of Trustees of Police Pension, supra; Anderson v. State, 363 So.2d 728 (La. App.2d Cir.1978), writ denied.
In order for due process rights to be effectively waived, whether in civil or criminal matters, the waiver must be made voluntarily, intelligently and knowingly. Absent an effective waiver, courts will not presume that a person acquiesces in the loss of fundamental rights. St. Julien v. South Cent. Bell Telephone Co., 433 So.2d 847 (La.App. 3d Cir.1983).
The trial court did not expressly recognize the City's right to judicial review of the Board's decision as a constitutional right or consider whether that right was effectively waived. The court implicitly found that the City waived any right to judicial review that it may have had by agreeing, in the 1982 contract with Ogburn, that the Board would resolve all disputes arising under the contract and that, in the trial court's words, "the decision of the Board of Trustees of the Policemen's Pension and Relief Fund was final and binding on the parties."
The stipulation of finality in the contract is subject to the proviso that the decision was "made in good faith." The trial court did not rule on the good faith issue before concluding that the City was contractually bound by the Board's decision. In any event, the City's contractual agreement to be bound by "the decision of [the] Board made in good faith" does not, in our view, constitute an effective waiver of the City's constitutional right to seek judicial review of the Board's decision, at least on the issue of the Board's good faith.

THE APA
We also consider whether the City's right to judicial review derives from the Administrative Procedure Act, LRS 49:951 et seq. The APA provides for judicial review of a final "decision or order" in an "adjudication" proceeding. § 964. These terms are defined in § 951.
"Adjudication" means "agency process for the formulation of a decision or order." § 951(1). The Police Pension and Relief Fund of the City of Shreveport fits within the statutory definition of "agency" (a board created by the state legislature which formulates or issues decisions or orders awarding or denying pensions pursuant to its statutory authority). § 951(2); LRS 11:3711, 3715 (formerly LRS 33:2351, 2355). See and compare Buras v. Board of Trustees of Police Pension, supra.
In order for an agency's disposition in a particular case to be reviewable under the APA, the disposition must constitute a *754 "decision" or "order," defined in § 951(3) as "the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing[.]" Unless a statute or the constitution requires notice and a hearing, an agency disposition is not a "decision" or "order" governed by the APA. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La. 1980).
The Police Pension and Relief Fund of the City of Shreveport is statutorily authorized to "hear and decide all applications for relief or pensions under this Subpart.... The board shall, within thirty days after an application is made by a member, pass upon said application and notify the member. ... The board shall keep a record of all its meetings and proceedings." LRS 11:3715 (formerly LRS 33:2355).
We need not, and do not, squarely decide whether this statute required the Board's disposition of Ogburn's dispute with the City "to be determined on the record after notice and an opportunity for an agency hearing." Compare LRS 11:3724(7), which clearly requires the Board to give notice and a hearing to a recipient of disability retirement benefits in order to determine whether the disability continues, and former LRS 33:2376. This latter section was held in Henning v. Carrier, 430 So.2d 1310 (La.App. 1st Cir.1983), writ denied, not to require notice and a hearing by the MPERS Board on an application for disability benefits.
Also pertinent is Buras v. Board of Trustees of Police Pension, supra. There it was held that the APA applied to proceedings of the Board of Trustees of the Police Pension Fund of the City of New Orleans that denied an application for disability benefits made under former LRS 33:2284 (now LRS 11:3634), which authorizes the Board to "hear and decide all applications for pensions." The holding was based on the court's finding that that Board fit the APA's definition of "agency." 367 So.2d at 852. The court did not squarely address whether the agency's disposition in the case was a "decision" or "order" as those terms are defined in the APA.
Unlike the claims for benefits in Henning and Buras, Ogburn's claim for reinstatement of his retirement benefits from the City was not based solely on the statute, but also on his 1982 contract with the City. Contracts with a governmental agency, as well as statutes, may create a constitutionally protected property interest. Coghlan v. Starkey, 845 F.2d 566 (5th Cir. 1988).
Even if we were to find that LRS 11:3715 did not require notice and a hearing on Ogburn's claim for reinstatement of benefits, Ogburn had, by virtue of the contract with the City, a protected property interest sufficient to invoke the right to notice and a hearing on constitutional grounds. We conclude that the Board's disposition of Ogburn's claim was a "final decision or order in an adjudication proceeding," reviewable under the APA. LRS 49:951, 964.
The delay for seeking judicial review of a decision reviewable under the APA is "thirty days after mailing of notice of the final decision by the agency or, if a rehearing is requested, within thirty days after the decision thereon." There is no evidence in this record that a rehearing was requested, or that notice of the Board's decision was mailed to the parties.
LRS 49:958 provides in part:
... Parties shall be notified either personally or by mail of any decision or order. Upon request, a copy of the decision or order shall be delivered or mailed forthwith to each party and to his attorney of record. The parties by written stipulation may waive, and the agency in the event there is no contest may eliminate, compliance with this Section.
The City's pension manager and its attorney, who interpreted the retirement statutes as the City urges, were present at the 1991 meeting when the Board voted to restore Ogburn's full benefits. The mayor, the finance director, and administrator of *755 the City were also present as members of the Board. The City thus had personal notice of the Board's decision. The City did not, at any time, file a petition for judicial review of the decision. Ogburn filed the mandamus action on November 20, 1991, more than two months after the Board rendered its decision. The City's answer to the mandamus action, claiming the Board's decision was arbitrary and capricious, was filed about a month later or more than three months after the Board's decision.

CONCLUSION
Under these circumstances, we find that the City did not timely assert its right to judicial review of the Board's decision under the APA. The decision was final and was not reviewable by the trial court when the mandamus action was filed. The Board's order imposed a ministerial duty on the defendants, which the trial court properly enforced by writ of mandamus without reaching the merits of the dispute. CCP Art. 3863; Robinson v. City of Baton Rouge, supra.

DECREE
At the City's cost, the judgment is AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, VICTORY, BROWN, STEWART and WILLIAMS, JJ.
Rehearing denied.