Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,741-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GRAFTAIRE, LLC                                     Plaintiff-Appellee

versus

CITY OF SHREVEPORT                                 Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 638,359

Honorable Ramon Lafitte, Judge

* * * * *

MAYER, SMITH & ROBERTS, LLP                 Counsel for Appellant
By: Deborah Shea Baukman

MARCUS E. EDWARDS
Shreveport City Attorney

HARPER LAW FIRM                             Counsel for Appellee,
By: Jerald R. Harper                        Graftaire, LLC
    Anne E. Wilkes

                                            Counsel for Intervenors/
                                            Appellees,
                                            Experimental Aircraft
                                            Association, Shreveport
                                            Chapter 343 of La., Inc.,
                                            Terry M. Sullivan, Mark
                                            Roberts and Randy A.
                                            Northcutt

* * * * *

Before THOMPSON, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Ramon Lafitte presiding. Defendant-Appellant, the City of Shreveport (the "City") appeals the trial court's ruling granting a preliminary injunction prohibiting the City from terminating or threatening to terminate the leases of plaintiff-intervenor-appellees Mark Roberts ("Roberts"), Randy A. Northcutt ("Northcutt"), Terry M. Sullivan ("Sullivan"), and Experimental Aircraft Association, Shreveport Chapter 343 of LA, Inc. (the "EAA") (herein collectively referred to as ("plaintiffs" or "appellees").

## FACTS AND PROCEDURAL HISTORY

For many years, Shreveport's downtown airport leased raw land to tenants to allow them to build hangars thereon. The City historically used standard form leases, which contained the following term:

> If LESSEE, having been given permission to remove Improvements from the Leased Premises does not do so and does not leave the Leased Premises in a clean and appropriate condition within ninety (90) days following termination of the lease, LESSEE's right to remove shall cease and at the option of LESSOR, the improvements shall become the property of LESSOR without any further action required of LESSOR, and LESSEE shall be deemed to have forfeited any ownership right in and to the Improvements and be deemed to have conveyed the Improvements to LESSOR.

Citing this improvement reversion clause in letters dated June 16, 2022, Oliver Jenkins ("Mr. Jenkins"), chairman of the Shreveport Airport Authority ("SAA") Board, informed plaintiffs that their leases were expiring and that they had to remove their hangars from the

premises within a contractual time period or the improvements would revert to the City.

On July 14, 2022, the original plaintiff, Graftaire, L.L.C. ("Graftaire"), filed a petition for declaratory judgment, preliminary injunction and permanent injunction.[1] In the petition and subsequent motions for intervention, Graftaire argued that the City sought to prematurely terminate the lease agreement and to take the lessees' hangars without compensation, in violation of the takings clause of the Louisiana Constitution of 1974.

At the same time, Graftaire filed a motion for preliminary injunction. In response, the City filed an answer setting forth affirmative defenses as well as a reconventional petition to evict Graftaire. After significant motion practice, the parties ultimately appeared before the trial court for a hearing on the first preliminary injunction on August 17-18, 2022.

During that hearing, plaintiffs put on evidence through witness testimony that the City was attempting to prematurely terminate their leases, that the City was attempting to take their hangars without compensation, and that the City had a long history of making prior assurances to lessees that it would not enforce the provisions of the lease regarding termination. The City also admitted that this was its practice, according to testimony from Stacy Kuba ("Ms. Kuba") (who, at the time of her testimony, was the City's Deputy Director of Airports) and Mr. Jenkins.

---

[1] Appellees, Roberts, the EAA, Northcutt, and Sullivan, later intervened. Since Graftaire is no longer a lessee of the City, its claims are now moot.

On August 18, 2022, the trial court granted the first preliminary injunction, finding that plaintiffs had a substantial likelihood of success on the merits that the City was prematurely terminating the hangar owners' leases. The trial court deferred ruling on the constitutional issues. At that point, the parties agreed and advised that it would likely be necessary for the trial court to address the constitutional issues at a later date in a second preliminary injunction hearing, which was held on February 7-8, 2023.

Prior to the second preliminary injunction hearing, the parties expressly agreed that the evidence and testimony adduced, introduced, and admitted during the hearing on the first preliminary injunction would be incorporated and admitted at the second hearing.

At the second preliminary injunction hearing, plaintiffs presented three bases for an injunction: (1) constitutional waiver, that the lease agreement did not constitute an appropriate, knowing, and voluntary waiver of plaintiffs' constitutional rights to compensation for a taking; (2) Shreveport City Code of Ordinances Section 18-33, which requires City Council approval for the SAA to acquire any immovable property, for which the SAA had none; and, (3) detrimental reliance, that there were representations made by SAA administration and board members assuring plaintiffs that there would be no action taken at the conclusion of the lease and that plaintiffs would merely be offered a new lease with the same terms and conditions. The trial court, however, granted a motion *in limine* from the City to exclude testimony based on detrimental reliance.

Mr. Jenkins testified at the second preliminary injunction hearing that, in his opinion, Section 18-33 of the City of Shreveport Code of Ordinances

3

was only meant to apply to instances of expropriation and thus did not prevent the City from lawfully asserting its rights under the improvement reversion clauses in the leases.

Ms. Kuba testified at the second preliminary injunction hearing that the improvement reversion provisions in the lease agreements were standard and not negotiable. Ms. Kuba further testified that the lease language at issue was vague and needed clarification, and that in 2019, the standard form leases were modified to make them more clear about improvement reversion at the conclusion of the lease.

George Carroll, President of the EAA, testified that the EAA was a charitable organization which owned a hangar and had a lease at the downtown airport. He testified that he never understood that the EAA was giving up ownership of its hangar to the City without any compensation.

Northcutt, who owned a hangar and had a lease at the downtown airport, also testified. He said that the new lease he was offered by the City included provisions requiring him to make upgrades and improvements to his hangar in addition to paying the City $20,000 for the first ten years of the lease. In regards to his current lease with the SAA, Mr. Northcutt testified that when he signed the lease, he never thought he would be forfeiting any constitutional rights he had with respect to his property. He said it never occurred to him that the City would attempt to take his hangar without compensating him for it.

Sullivan, another hangar owner with a lease at the downtown airport, also testified. He said that if he thought he would have been relinquishing

any of his constitutional rights by signing his lease with the SAA, he never would have signed it.

On July 7, 2023, the trial court granted plaintiffs' preliminary injunction, providing two bases for it:

> COURT: [T]he issues that were presented – there were two issues presented during the hearing. Number 1 was by what authority does the Shreveport Airport Authority have to acquire the hangars in connection with City Ordinance Section 18-33 subsection B; and Number 2, whether the actions of the Shreveport Airport Authority constitutes an unauthorized taking in connection with Louisiana Constitution Article 1, Section 4.
>
> . . . .
>
> COURT: In connection with the first issue . . . During the hearing on this matter there was no evidence presented indicating that the Shreveport Airport Authority was authorized by the City Council to acquire the hangars, which are immovable property. There was some argument or testimony presented by the City that this ordinance was only limited to expropriations but that is not the case, the ordinance is not limited to expropriation, as was suggested by the City witness. As presently presented, this Court finds that the movers have a likelihood of— substantial likelihood of prevailing on this issue at trial.
>
> . . .
>
> COURT: Issue Number 2, whether the actions of the Authority, Shreveport Airport Authority, constitute an unauthorized taking in connection with Louisiana Constitution Article 1, Section 4 . . . In this matter the City of Shreveport, of course, is seeking to have the hangar owners at the end of the lease remove the hangars, demolish the hangars, or surrender the hangars to the City. The lease does not – the lease at issue, they do not specifically indicate that the hangars would be surrendered to the City without just compensation. The issue is whether there was a waiver of constitutional rights when the leases were signed and if so whether such waiver was knowing, voluntary and expressed in the lease.

5

> The lease – there was some testimony that the lease was later changed and the new leases that the Shreveport Airport Authority is executing indicates that the leases will be surrendered without compensation.
>
> The Court finds in connection with Issue Number 2 that there is a substantial likelihood of prevailing on this issue, of the plaintiff prevailing on this issue at the trial.

On July 18, 2023, the trial judge signed an order enjoining the City of Shreveport "from terminating or threatening to terminate the leases of the Plaintiff-Intervenors under penalty of possible loss of ownership of hangars or other improvements in connection with the Leased Premises without the payment of compensation."

On July 20, 2023, the City filed its motion for suspensive appeal which was granted on July 24, 2023. Appellees objected to the appeal being suspensive notwithstanding the provisions of La. C.C.P. art. 3612(B) barring the suspension of a preliminary injunction during the pendency of an appeal. On July 25, 2023, the City then filed its motion for devolutive appeal, which was granted on July 27, 2023.

## DISCUSSION

*Preliminary Injunction Standard*

A preliminary injunction is a procedural device interlocutory in nature and designed to preserve the existing status pending a trial of the issues on the merits of the case. La. C.C.P. art. 3601; *Levine v. First Nat'l Bank of Com.*, 06-0394 (La. 12/15/06), 948 So. 2d 1051; *Tanner v. Succession of Bourland*, 52,918 (La. App. 2 Cir. 11/20/19), 285 So. 3d 104. A preliminary injunction may be issued on merely a *prima facie* showing by the plaintiff that he is entitled to relief. *Rand v. City of New Orleans*, 17-0596 (La.

6

12/6/17), 235 So. 3d 1077. The grant or denial of preliminary injunction will not be disturbed except for a clear abuse of the trial court's discretion. *Praeses, L.L.C. v. Bell*, 54,601 (La. App. 2 Cir. 6/29/22), 343 So. 3d 933; *Bd. of Sup'rs v. McCalmont*, 54,451 (La. App. 2 Cir. 5/25/22), 339 So. 3d 1261.

While it is normally required to show irreparable injury in order to succeed on a preliminary injunction, such a showing is unnecessary when "the conduct sought to be restrained is unconstitutional or unlawful *i.e.*, when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right." *Jurisich v. Jenkins*, 99-0076 (La. 10/19/99), 749 So. 2d 597, 599 (*citing S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm'n*, 555 So. 2d 1370 (La. 1990)).

Thus, "once a plaintiff has made a *prima facie* showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists." *Jurisich*, *supra*, 749 So. 2d at 599.

The grant of a preliminary injunction will not be disturbed except for a clear abuse of the trial court's discretion. *Tanner v. Succession of Bourland*, *supra*. In *Cason v. Chesapeake Oper. Inc.*, 47,084 (La. App. 2 Cir. 4/11/12), 92 So. 3d 436, 441, *writ denied*, 12-1290 (La. 9/28/12), 98 So. 3d 840, we held that in the context of a preliminary injunction, "when a trial court receives evidence and makes factual determinations, the proper standard is abuse of discretion." *See also Town of Sterlington v. Greater Ouachita Water Co.*, 52,482 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1257, *writ*

7

*denied*, 19-00913 (La. 9/24/19), 279 So. 3d 386, and *writ denied*, 19-00717 (La. 9/24/19), 279 So. 3d 931.

*Constitutional Taking and Waiver*

The City argues that appellees cannot establish their taking claim because the City's actions simply followed the lease agreements. The City asserts that Louisiana courts look first to the rights and responsibilities enumerated in lease agreements prior to reaching a constitutional analysis. The City argues that the lease agreements provide that at lease termination, the lessee has a right to remove improvements it owns from the leased premises for a set period of time, and if the improvements are not removed during that time, they become property of the City without any further action required by the City.

The City avers that appellees signed leases agreeing that, if not renewed when the leases expired, improvements would revert to the City, a provision which relieves appellees from their obligation to restore the property. Therefore, the City argues, this was not an instance of a taking without just compensation.

The City also argues that even if improvement reversion by a governmental lessor constitutes a taking, then this court should find that a constitutional waiver was knowingly made when appellees entered into the leases that plainly provided for reversion when the tenant elected not to remove improvements to the leased premises at the termination of the lease in lieu of exercising its obligation to restore the premises to its prior condition. In support of its argument, the City asserts that the phrase

8

"without further action" is commonly understood to mean with no action or to have a self-operational effect.

Appellees, on the other hand, argue the lease agreements in question did not contain a waiver of their constitutional right to compensation. Appellees assert that the existence of a contract does not negate the City's responsibility and requirement to obtain an express, knowing, and voluntary waiver of constitutional rights in that contract. Appellees note Ms. Kuba's acknowledgement that the lease provision at issue was less than clear regarding the City's right to take private property without compensation. Thus, appellees claim that the lease language was ambiguous at best such that the requirements to satisfy a constitutional waiver could not possibly have been met.

The Louisiana Constitution provides safeguards against the taking of private property by a governmental entity (including any political subdivisions, including municipalities):

> (A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
>
> (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and *with just compensation paid to the owner or into court for his benefit*. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.

La. Const. art. I, § 4(A)-(B)(1) (emphasis added).

9

It has been settled jurisprudence in the United States for almost a century that "we do not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v Pub. Utils. Comm'n*, 301 U.S. 292, 307, 57 S. Ct. 724, 731, 81 L. Ed. 1093 (1937). It is likewise settled law that the waiver of constitutional rights must be knowing, intelligent, and voluntary and courts will indulge every reasonable presumption against waiver of those rights. *Commodities Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S. Ct. 3245, 92 L. Ed. 675 (1986). This court has held that it is in full accord with the federal authorities, noting that a waiver of constitutional rights must be made voluntarily, intelligently, and knowingly, and that "absent an effective waiver, courts will not presume that a person acquiesces in the loss of fundamental rights." *Ogburn v. City of Shreveport*, 614 So. 2d 748, 753 (La. App. 2 Cir. 1993), *writ denied*, 619 So. 2d 547 (La. 1993).

Regardless of who shoulders the burden, the factors used by federal courts to decide whether a waiver was made knowingly, voluntarily, and intelligently include: (1) whether there was gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous. *RDO Fin. Servs. v. Powell*, 191 F. Supp. 2d 811 (N.D. Tex. 2002) (*citing Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694 (E.D. La. 1999)).

Here, the evidence at trial showed that there are no competing general aviation airports in the Shreveport-Bossier area and that the SAA enjoys near-monopoly power with respect to general aviation services. Further, the

10

City, through Ms. Kuba, acknowledged that the lease agreements are "form" contracts, almost all the terms of which are nonnegotiable. Additionally, the clause that the City argues contains the waiver was not conspicuous inasmuch as the City itself admitted that it was unclear. Under these circumstances, we do not find that a knowing, voluntary, intelligent waiver of appellees' constitutional right to just compensation following a taking was made. Accordingly, we do not find that the trial court abused its discretion in finding that there was a substantial likelihood of appellees' prevailing on this issue.

*Suppletive Law*

The City also argues that appellees do not have a property right in the improvements after the notice period following lease termination, and that improvement reversion clauses in state and municipal lease agreements allow for the lawful exercise of the City's rights as the landowner via accession. The City asserts that appellees are essentially making an as-applied constitutional challenge to La. R.S. 2:135.1 and La. C.C. art. 2695, both of which provide for reversion of leasehold improvements to the lessor at lease termination.

While the City acknowledges that the new leases it proposed include additional language plainly dismissing any notion of compensation, it claims the leases at issue here also do not require compensation. To the extent that the lease is found to be silent on the compensation issue, the City argues that La. C.C. art. 2695, which provides a lessor with the option to demand removal of improvements and appropriate ownership without any obligation of reimbursement to the lessee, can be read into the subject leases.

11

Appellees argue that the City's position on the applicability of La. C.C. art. 2695 ignores a necessary part of contract interpretation and analysis: ambiguity. Appellees assert that the ambiguity regarding what happens at the conclusion of the lease and the clear lack of explicit, knowing, and voluntary waiver of constitutional rights means the City cannot "take" the hangars without just compensation.

Appellees note that the City admitted that lease terms at issue needed clarification and that the City tried to do just that in its attempt to revise the form leases in 2019. Appellees also dispute the City's claim that they are making a constitutional challenge to La. C.C. art. 2695, claiming instead that the lease agreements at issue have a constitutional dimension by their nature since they are between a private person and the government, but that does not mean that La. C.C. art. 2695 is unconstitutional.

La. C.C. art. 2695 states:

In the absence of contrary agreement, upon termination of the lease, the rights and obligations of the parties with regard to attachments, additions, or other improvements made to the leased thing by the lessee are as follows:

(1) The lessee may remove all improvements that he made to the leased thing, provided that he restore the thing to its former condition.

(2) If the lessee does not remove the improvements, the lessor may:

(a) Appropriate ownership of the improvements by reimbursing the lessee for their costs or for the enhanced value of the leased thing whichever is less; or

(b) Demand that the lessee remove the improvements within a reasonable time and restore the leased thing to its former condition. If the lessee fails to do so, the lessor may remove the improvements and restore the leased thing to its former condition

12

at the expense of the lessee or appropriate ownership of the improvements without any obligation of reimbursement to the lessee. Appropriation of the improvement by the lessor may only be accomplished by providing additional notice by certified mail to the lessee after expiration of the time given the lessee to remove the improvements.

La. C.C. art. 2695(1)-(2)(b).

Here, the provisions of appellees' leases addressing what happens at the conclusion of the lease with regard to compensation obligations are ambiguous. It is well settled that any ambiguity in a contract is interpreted against the drafter (here, the City) and in favor of the lessee (here, the appellees). Moreover, since the language in the lease agreements does not, in fact, contemplate an unrestricted right to remove the improvements at the conclusion of the lease, and is unclear on the issue of payment of compensation for the taking of the hangars (or rather the City addressed by amending the later leases), another "canon" of contractual interpretation instructs us to look to other sections of the contract. In each of appellees' leases, there is a revocability clause, which states as follows:

This lease is revocable by the City of Shreveport at any time that a public use of the property should be found to exist by the City Council. In such event, LESSOR agrees to compensate LESSEE for LESSEE's interest in the lease and LESSEE's improvements pursuant to the guidelines used by the City of Shreveport when it expropriates private property for public use.

First, the leases identify appellees' property as "private property." Secondly, the only purpose for which the City – per its Charter – can acquire property, is for "any municipal purpose." Shreveport City Charter Sec. 2.03(a). Necessarily, this means for a municipally related "public purpose." Accordingly, the City may only "take" private property for a

13

municipal public purpose, and such taking requires just compensation. Following the language of the revocability clause of the subject leases, in light of: (a) the ambiguity of the lease language regarding what happens at the conclusion/termination of the lease; and (b) the clear lack of explicit, knowing, and voluntary waiver of the appellees' constitutional rights, the City cannot "take" the hangars without just compensation for same.

The City also attempts to invoke the provisions of La. R.S. 2:135.1(B)(2)(b). This statute, however, is not applicable to the Shreveport Downtown Airport, which is where appellees' hangars are located. Indeed, La. R.S. 2:135.1(B)(2)(c) states that "the provisions of this Paragraph shall not apply to the . . . Shreveport Downtown Airport."

We do not find La. C.C. art. 2695 unconstitutional. Rather, we hold that because the lease agreements at issue sought to appropriate appellees' property without compensation at the end of the term, the addition of an unambiguous, clear, voluntary, and express waiver of that right was necessary. The City has admitted that the lease terms at issue needed clarification, and that clarification was to specifically inform lessees that, at the conclusion of their lease, the City could take their hangar on the leased property without compensation.

In fact, the City attempted to do just that in its 2019 lease revisions. This effectively acknowledged ambiguity in the prior form leases. However, the leases in the record before us are not clear or express. Accordingly, we find no abuse of the trial court's discretion in finding that because of the lack of clarity and express language, appellees did not effectively waive their constitutional rights.

14

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court granting the temporary restraining order filed by appellees.  The appellate court costs in the amount of $2,144 are assessed to the City of Shreveport.

**AFFIRMED.**