376 So.2d 330 (1979)
Peter VUJNOVICH
v.
LOUISIANA WILDLIFE AND FISHERIES COMMISSION.
No. 10663.
Court of Appeal of Louisiana, Fourth Circuit.
October 4, 1979.
Peter E. Duffy, Metairie, for Louisiana Wildlife & Fisheries Commission, defendant-appellee.
Pitard, Pitard & Porobil by Gregory M. Porobil, New Orleans, for Peter Vujnovich, plaintiff-appellant.
Before REDMANN, LEMMON and BOUTALL, JJ.
BOUTALL, Judge.
This is a suit for damages against the Louisiana Wildlife and Fisheries Commission arising out of six oyster leases of State water bottoms. The trial court dismissed plaintiff's demands and he has appealed. We affirm.
Peter Vujnovich held six oyster leases of State water bottoms located in Hackberry Bay (Bay Duchene) in Jefferson and Lafourche Parishes. The earliest lease in time began in 1957 and expired on October 1, 1972. The latest lease began in 1961 and expired December 31, 1975. All of the leases were made under the provisions of and subject to the law pertaining to ownership and control of water bottoms for oyster *331 purposes as set out in L.R.S. 56:421 through 449. In accordance with Section 426 each lease was "for a period of fifteen years thereafter, with the privilege of renewal for not more than a ten year period. . .."[1]
At issue here is the exercise of the privilege of renewal. It is conceded that Vujnovich attempted to renew each lease as it expired and submitted his renewal to the Wild Life and Fisheries Commission with the appropriate fees. However, that body never did accept the renewal, and finally advised him on February 17, 1977 that none of his applications for renewal would be accepted and his deposit would be returned. Vujnovich contends that the failure of the Commission to reject his renewal timely, coupled with its failure to do anything over a period of time, constitutes acceptance of his renewal. Additionally, he contends that the provisions of Section 426 quoted above grant him a privilege of renewal which he timely exercised and became binding without any other action of the Commission.
It is apparent that the statutory law governing oyster leases of water bottoms provides for lease conditions that differ from the provisions of ordinary conventional leases. Section 426 specifically sets out the term and price of the lease and requires that any renewal lease shall be made subject to the provisions of R.S. 56:421 through 56:449 and subject to any rules and regulations established thereunder by the Commission. A fair reading of those statutory provisions clearly shows that the legislature intended that the leasing of water bottoms for oyster cultivation and the renewal of those leases are discretionary with the Commission in its determination that those water bottoms are suitable for oyster cultivation. This discretion continues to exist at the time of renewal of the lease.
We do not say that the Commissioner's refusal to renew can be exercised arbitrarily but must be exercised upon some sound basis. We note for example that Section 424 requires that the former leaseholder be granted the first right of renewal of the lease.
Indeed, it may be argued that Section 426's provision for "the privilege of renewal" means no more than Section 424's provision that every lessee has "first right of renewal": The Commissioner may not lease a tract upon the expiration of a lease to anyone other than the present lessee without first allowing the lessee the opportunity to renew. Furthermore, unless privilege means first right of renewal, the lessee under Section 426 (as amended in 1975) may forever exercise his "privilege" of renewing for successive 15 year periods.
In this case it was stipulated by the parties that Hackberry Bay or Bay Duchene was designated as an oyster seed reservation to be managed by the Commission for the best interest of the oyster industry. See L.R.S. 56:457, originally taken from Section 6 of Act 227 of 1944 and amended by Act 157 of 1974. Because of that designation, the Commission has not authorized *332 the leasing or renewal of leasing of any of these water bottoms, permitting existing leases to expire.[2] Because the provisions of renewal are governed statutorily, it appears that the Commission has acted within the statutory scope of authority granted it, and has not acted arbitrarily in refusing to renew.
For the reasons above assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] The original Section 426 was obtained from Section 6, Act 67 of 1932 and was amended by Act 105 of 1958 and again by Act 194 of 1975. There has been no change in the provisions pertinent to the issues here, and we reproduce, for information, the Section as amended by the 1975 Act.

"§ 426. Commencement and duration of lease; existing leases affected; payments of rent.
"All leases made under the provisions of R.S. 56:421 through 56:449 begin on the day the lease is signed, and continue for a period of fifteen years thereafter, with the privilege of renewal for not more than a ten year period and thereafter for successive periods of not more than fifteen years each, subject to and at such valuation as to rental by the commission as conditions warrant, at not less than one nor more than five dollars per acre or fraction of an acre per year. Any renewal lease shall be made subject to the provisions of R.S. 56:421 through 56:449 and subject to any rules and regulations established thereunder by the commission.
"The rent shall be paid in advance at the time of the signing of the lease up to the thirty-first of December following, and annually thereafter, in advance, on or before the first day of January, whether the lease be held by the original lessee or by an heir, assignee, or transferee. Amended by Acts 1958, No. 105, § 1; Acts 1975, No. 194, § 1."
[2] Plaintiff was apparently aware of this practice, since he did not make any annual rental payments on any of the leases he attempted to renew. Thus, he continued to use the leased properties at no cost until his attempted renewals were rejected.