749 So.2d 597 (1999)
Mitchell B. JURISICH, Sr., Mitchell B. Jurisich, Jr., Frank Jurisich, G.I. Joe, Inc., Gulf Star Oysters, Inc., and Bayou Canard, Inc.
v.
James H. JENKINS, Jr., Secretary of the Louisiana Department of Wildlife & Fisheries, The Louisiana Department of Wildlife & Fisheries, and the Louisiana Wildlife & Fisheries Commission.
No. 99-C-0076.
Supreme Court of Louisiana.
October 19, 1999.
Order Denying Rehearing November 17, 1999.
*598 Michael Louis Martin, George Pivach, II, Pivach & Pivach, Belle Chasse, Counsel for Applicant.
Richard P. Ieyoub, Atty. Gen., Jedd Spencer Malish, New Orleans, Frederick Coller Whitrock, Baton Rouge, Andrew Charles Wilson, New Orleans, Donna M. Young, New Orleans, Counsel for Respondent.
KNOLL, Justice.[*]
This action for preliminary injunction addresses the scope of authority granted to the Secretary for the Louisiana Department of Wildlife and Fisheries (Secretary) with respect to the renewal of oyster leases as provided by La.R.S. 56:428. At issue is the question of whether the Secretary may refuse to renew oyster leases unless the oyster lessees agree to the inclusion of an onerous condition which was not part of their original lease agreements. In particular, the lease renewals were made contingent upon the inclusion of a clause which made the oyster leases "subservient to navigation, maintenance of navigation, and all normal, usual and permissible mineral and oil field activity which has been sanctioned by the State of Louisiana through a prior existing lease, permit, or contract." We reverse the lower courts' denial of the preliminary injunction and remand. We find no authority for the Secretary's actions, and further find the clause at issue was against the spirit and contrary to the Secretary's legislative mandate in La.R.S. 56:425(C), to "make such stipulations [clauses] in the leases ... as he deems necessary and proper to develop the [oyster] industry." (emphasis added).

FACTS & PROCEDURAL HISTORY
Mitchell B. Jurisich, Sr.; Mitchell B. Jurisich, Jr.; Frank Jurisich; G.I. Joe, Inc.; Gulf Star Oysters, Inc.; and Bayou Canard, Inc. (the Jurisichs) are the lessees and/or successors of holders of oyster leases which cover certain State owned water bottoms in Plaquemines, Terrebonne, and St. Bernard Parishes. These oyster leases had a term of fifteen years which expired on December 31, 1996, and were renewable for an additional fifteen year period beginning on January 1, 1997. In December, the Jurisichs made renewal payment on the oyster leases for which the Louisiana *599 Department of Wildlife and Fisheries (LDWF) issued receipts.
Subsequently, on January 27, 1997,[1] the Secretary for LDWF, James H. Jenkins, Jr., wrote certified letters to the Jurisichs notifying them that "the Louisiana Department of Wildlife and Fisheries is exercising its discretion at this time to not renew the lease[s] of state water bottoms." Accordingly, the Jurisichs were advised that their oyster leases terminated on December 31, 1996. The Secretary's letter further informed the Jurisichs that the State would consider lease renewal for fifteen years if they would sign new lease documents by February 28, 1997. The new lease documents contained five clauses which contained conditions that were not part of the earlier oyster leases, covering the following areas: the Navigation and Oil Field Activity clause; the Future Litigation clause; the Coastal Wetlands Restoration Advisory; Allocation of Risk and Liability, and Indemnification clause; and the Venue clause.[2]
Initially, the Jurisichs filed an action against the three defendants, the Secretary, LDWF, and the Louisiana Wildlife & Fisheries Commission (referred to collectively as defendants), seeking a declaratory judgment, damages, and a permanent injunction together with a rule for a preliminary injunction. Shortly thereafter, the parties entered into an agreement which renewed the oyster leases for fifteen years, reserving to the parties "the right to pursue the outcome from this litigation through the final stages of appeal to final judgment." This letter agreement effectively resolved all the issues before the court, except for the question of the validity of the five clauses.
After conducting an evidentiary hearing, the trial court granted the preliminary injunction as it related to the inclusion of the Venue clause in the renewal leases, but denied it as to all other clauses. Thereafter, the Court of Appeal, First Circuit, affirmed the trial court judgment. Jurisich v. Jenkins, 97-1870 (La.App. 1 Cir. 9/25/98), 722 So.2d 1008.
We granted the Jurisichs' writ application in part, limiting the writ grant to consideration of the navigation and oilfield activity clause. 99-0076 (La.3/12/99), 739 So.2d 212. After oral argument, the Jurisichs filed a motion to reconsider our limited writ grant. We now deny the Jurisichs' motion for reconsideration, noting that they may re-urge their objections to the remaining oyster lease clauses at a hearing conducted in the trial court on their request for a permanent injunction.[3] We now proceed with our analysis of the issues raised relative to the navigation and oil field activity lease clause.

PRELIMINARY INJUNCTION
A petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n, 555 So.2d 1370 (La.1990). Once a plaintiff has made a prima facie showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists. Ouachita Parish Police Jury v. American Waste & Pollution Control, 606 So.2d 1341 *600 (La.App. 2 Cir.), writ denied, 609 So.2d 234 (La.1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993).
Utilizing this standard, the Jurisichs assert a twofold attack. First, they contend that the Secretary overstepped his legislative authority when he failed to renew the existing oyster leases without the inclusion of the navigation and oil field activity clause. Second, they contend that the Secretary exceeded his authority when he proposed the inclusion of the navigation and oil field activity clause in the lease which was neither necessary nor proper for the development of the oyster industry.

Oyster Lease and Renewal: Statutory Scheme
It has been recognized that the statutory laws relative to the leasing of water bottoms for oyster production differ from the provisions which govern ordinary conventional leases addressed in Title IX of Book III of the Civil Code. Vujnovich v. Louisiana Wildlife & Fisheries Comm'n, 376 So.2d 330 (La.App. 4 Cir.1979); see also Inabnet v. Exxon Corp., 93-0681 (La.9/6/94), 642 So.2d 1243 (Kimball, J., dissenting in part).[4]
The LDWF is authorized to grant leases on state-owned water bottoms for oyster cultivation, bedding, and harvesting, and matters relating thereto, as provided in Subpart D of Part VII of Chapter 1 of Title 56 of the Louisiana Revised Statutes of 1950. La.R.S. 41:1225. Accordingly, La.R.S. 56:425 provides that the Secretary may only lease this State's water bottoms and natural reefs in the water bottoms of this State to a resident, a firm composed of residents, or a corporation domiciled in Louisiana or organized under this State's laws. The Secretary's right to grant oyster leases is likewise contingent upon a determination that the State owns the water bottoms to be leased, and that the lessee agrees that he will operate under Louisiana laws and pursuant to LDWF's rules and regulations. La.R.S. 56:425(A), (B). All leases made under the provisions of Subpart D begin on the date the lease is signed and continue for a fifteen-year period. La.R.S. 56:428(A).
As provided in La.R.S. 56:428(A), the owners of expiring oyster leases have the first right of renewal of their oyster leases, "provided the lease is capable of supporting oyster populations." "Renewals shall be executed by the secretary, and shall be made subject to both the provisions of this Subpart and to the rules and regulations established by the department." Id. (emphasis added). "The secretary has sixty days from the date of expiration of a lease to execute a renewal lease. If a renewal lease is not executed within this sixty-day period, the lease is automatically renewed. In either situation, the fifteen-year period of the renewal lease shall begin on the first day following the expiration date of the prior lease." La.R.S. 56:428(B).
In the present case, the Jurisichs contend that the Secretary was powerless to deny renewal of their oyster leases, because it was not shown that the leases were incapable of supporting oyster populations. We agree.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. LA.CIV. CODE art. 9. The words of a law must be given their generally prevailing meaning. LA.CIV. CODE art. 11. The word "shall" in its usual signification for purposes of statutory construction denotes a mandatory duty. Ray v. South Cent. Bell Tel. Co., 315 So.2d 759 (La.1975).
*601 Applying these well established tenets to the present case, it is evident that the word "shall" as used in La.R.S. 56:428(A) is clear and free from ambiguity, and its application does not lead to absurd consequences. Unless the oyster beds initially leased are incapable of supporting oyster populations, the Secretary has a mandatory duty to renew. Such understanding not only abides with statutory construction, but also conforms with the economic reality that oyster lessees face.[5]
In stark contrast to a conventional lessee, oyster lessees must spend years developing the leased acreage before oysters may be harvested and may have to wait a long time to realize the benefit of their labor. Additionally, oyster lessees are restricted under La.R.S. 56:433 as to the size of oysters which may be harvested, are obligated by La.R.S. 56:430 to yearly place at least one-tenth of the leased barren water bottoms into cultivation, are required to stake off and mark the leased water bottoms before harvesting, and must yearly mark seeded areas to prevent trawling. Thus, it is clear that the oyster leases under which oyster lessees function are more than lease instruments; rather as Justice Kimball recognized in her partial dissent in Inabnet, 642 So.2d at 1257, these leases are indeed "used by the State of Louisiana to foster and protect the Louisiana oyster industry."
It is, then, in that light that we view the mandatory lease renewal provisions which the Legislature provided in La.R.S. 56:428. If an oyster lessee has indeed been a good steward of the leased water bottom, has developed the leased property as required by law, and that property is capable of supporting oyster populations, the lessee has a legislatively granted "first right of renewal" of the lease which the Secretary is legislatively mandated to recognize. Id. This the Secretary failed to do in the case now before us.
To the contrary, rather than recognize the Jurisichs' choice to exercise the first right of renewal which was accorded them, the Secretary thwarted the statutorily created scheme through the imposition of the navigation and oil field activity clause. By this means, the Secretary effectively made lease renewal contingent upon the lessees' acquiescence to this additional clause which was not part of the original lease agreement. This the Secretary was never legislatively authorized to do.
The discretion the Secretary has to renew an oyster lease is limited by a determination of the lease's capability of supporting oyster populations. La.R.S. 56:428(A). To allow the navigation and oil field activity clause as a condition of lease renewal would be an impermissible expansion of the Secretary's authority. The Legislature in its wisdom has spoken and specifically provided the law the Secretary must apply in oyster lease renewals. For an expansion of this authority, the Secretary must seek legislative authority and without such a legislative grant we cannot sanction his initiative to expand his authority in lease renewals.
In rebuttal, the defendants make three assertions. First, they contend that at the time of lease renewal it is common for lessees, as well as itself, to make changes in the original lease, e.g., most often a lessee might propose to extend the acreage leased. Although no such showing has been made in the present matter, we point out that in such instance a new and different contract comes into being, and the provisions relative to lease renewal are not applicable. See Emporia Holding Co. v. City of New Orleans, 94-1274 (La.App. 4 Cir. 10/27/94), 644 So.2d 1156, writ denied, 94-2766 (La.11/29/94), 646 So.2d 406; *602 National Car Rental Sys., Inc. v. City of New Orleans, 160 So.2d 601 (La.App. 4 Cir.1964). Accordingly, we find that this first argument is easily distinguishable and clearly irrelevant to the facts now before us.
Defendants next assert that La. R.S. 56:425(C) allows the Secretary to make "such stipulations in the leases ... as he deems necessary and proper." In accordance with that authority, it urges that the doctrine of contemporaneous construction should be applied since it has interpreted this statute to allow the inclusion of new clauses at the time of lease renewal. While a persuasive indication of the true meaning of a statute is the contemporaneous administrative construction given the statute by an agency charged with administering it, an administrative construction cannot be given effect where it is contrary to or inconsistent with legislative intent. Sales Tax Dist. No. 1 of Lafourche Parish v. Express Boat Co., 500 So.2d 364 (La.1987). "An administrative construction cannot have weight where it is contrary to or inconsistent with the statute." Traigle v. PPG Indus., Inc., 332 So.2d 777, 782 (La.1976).
We disagree with defendants' reliance on contemporaneous administrative construction since we observe no ambiguity in the statutory construction. We also find that although LDWF has now-and-then inserted new clauses at the time of lease renewal, there are instances shown in the record where it has chosen not to make such inclusions.[6] Moreover, we find that defendants' interpretation is contrary to the clear language that the Legislature has provided. As further stated in La.R.S. 56:425(C), the lease stipulations "must be consistent with the provisions of [Subpart D]." As such, it is clear that the inclusion of this new lease clause would not be in conformity with the concept of lease renewal that is contemplated in Subpart D. As seen earlier, the inclusion of this new lease clause would create a new contract and would effectively eliminate the oyster lessees's legislatively crafted first right of renewal.
The third assertion, defendants' reliance on the public trust doctrine, we will address below as part of our discussion on the basic authority of the LDWF Secretary.

LDWF Secretary's Authority
The Jurisichs further argue in support of their request for a preliminary injunction that the Secretary had no authority to include the navigation and oilfield clause because this clause did not develop the oyster industry as La.R.S. 56:425(C) requires.
As stated hereinabove, the navigation and oilfield clause which the Secretary required in the renewal leases provided:
The lease is issued under the condition that it is subservient to navigation, maintenance of navigation, and all normal, usual and permissible mineral and oil field activity which has been sanctioned by the State of Louisiana through a prior existing lease, permit, or contract.
La.R.S. 56:425(C) recognizes that the Secretary may "make such stipulations in the leases made by him as he deems necessary and proper to develop the [oyster] industry" provided that the clauses are consistent with the statutory provisions of Subpart D. (emphasis added). Notwithstanding, La.R.S. 56:6(16) provides that the Wildlife and Fisheries Commission through its Secretary "[s]hall assist in protecting all lessees of private oyster bedding grounds in the enjoyment of their rights." (emphasis added).
Basic to the oyster lessees' lease rights is La.R.S. 56:423(B) which provides, in pertinent part:

*603 (1) A lessee of oyster beds or grounds who has obtained, recorded, and marked his lease in compliance with the law shall have the right to maintain an action for damages against any person, partnership, corporation or other entity causing wrongful or negligent injury or damage to the beds or grounds under lease to such lessee.
* * *
(3) Any action for damages under this Section shall be brought within one year of the occurrence of the wrongful or negligent act, or within one year of the date of discovery of such act, whichever last occurs.
Against that backdrop, the Jurisichs contend that the navigation and oilfield clause which the Secretary inserted at the time of lease renewal was prohibited because its inclusion did not develop the oyster injury. They argue that the trial stipulation that the litigants entered into the record conclusively establishes that the clause was not inserted for the development of the oyster industry. That trial stipulation provides:
Beginning in at least the 1960's, it was the practice of the Department [of Wildlife and Fisheries] to include a clause in certain oyster leases when there was a potential conflict between the oyster lease and a pre-existing lease or right-of-way, both located in the same area. The purpose of the clause was to protect an oil and gas company from claims against it brought by a subsequent oyster lessee in the same area claiming damages for oyster mortality and bed damage as a result of the normal operations of the oil and gas company. (emphasis added).
They further argue that the navigation and oilfield clause requires oyster lessees to waive their cause of action for negligent or wrongful injury granted in La.R.S. 56:423(B)(1), and that such action is inconsistent with the provisions of Subpart D, and clearly exceeds the Secretary's authority, because none of this develops the oyster industry.
Defendants counter by relying on the trial court's finding that the clause did not limit the oyster lessees' cause of action because the language of that lease provision rendered oyster leases only subservient to "normal, usual and permissible" activity while La.R.S. 56:423(B)(1) allowed oyster lessees to bring suit only for "wrongful or negligent" activity. Defendants further construe the clause to recognize this Court's pronouncement in Inabnet which attempted to balance the rights of an oyster lessee and the holder of a surface lease and servitude that involved correlative rights and obligations. To the contrary, the Jurisichs assert that the lower courts misconstrued the clause by finding that navigation and maintenance of navigation was modified by the limiting phrase, "normal, usual and permissible." Our first task then is to discern the meaning of the clause.
Initially, we find that the lower courts misconstrued the wording of the clause. The activities of navigation and maintenance of navigation are not qualified by the terms "normal, usual and permissible." As provided in the added lease clause, only "normal, usual, and permissible mineral and oil field" activity which exists as per a pre-existing lease, permit, or contract primes the oyster leases. Accordingly, the clear wording of the clause does not limit the types of navigation and maintenance of navigation, and makes these oyster leases subservient to all such activity.
The next question then presented is whether the clause language which makes oyster leases subservient to all normal, usual and permissible mineral and oil field activity conflicts with the grant in La.R.S. 56:423(B)(1) to oyster lessees of the right to seek damages against those who wrongfully or negligently injure or damage the beds or grounds under the lease. After carefully examining this issue, we find that the language of this clause contravenes the *604 rights lessees may possess against mineral lessees under stipulation pour autrui clauses that may exist in State mineral leases as recognized in Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969), and further contravenes our holding in Inabnet.
Andrepont recognized that a farming lessee is entitled to damages to his crops caused by the non-negligent activity of a mineral lessee because the mineral lease obligated the mineral lessee to pay all damages that its operations caused. In essence, we recognized that such clause acted as a stipulation pour autrui in favor of the farm lessee which was not dependent upon negligence. Similarly, in the present case, the parties introduced a standard Louisiana mineral lease form into evidence which provides, in pertinent part:
In addition to restoration of the leased premises as contemplated and required by this lease, Lessee shall be responsible for all damages to the leased premises, and in addition thereto and without limitation for all damages to any timber, crops, roads, buildings, fences, and other improvements thereon.
If a stipulation pour autrui, such as the above, was contained in a pre-existing mineral lease and such lessee damaged the Jurisichs' oyster leases in the course of their normal, usual and permissible activity, such conduct would be wrongful as contemplated in La.R.S. 56:423(B)(1) and would be actionable. It is in this manner that the proposed clause would be inconsistent with this statutorily granted right. Simply stated, such a provision would deprive an oyster lessee of this right to recover damages which were wrongful under La.R.S. 56:423(B)(1), but not necessarily the result of the mineral lessee's negligence.
Likewise, LDWF's proposed clause further conflicts with our holding in Inabnet. We did not simplistically hold in Inabnet that the existence of a pre-existing mineral lease cuts off any action on the part of the subsequent oyster lessee. Such a factor is but one consideration in the adjudication of the delictual liability of parties who hold correlative rights to the property.[7] In that case, it was Exxon's actual exercise of its dredging rights ten years prior to plaintiffs acquisition of an oyster lease and its maintenance of that dredging activity consistent with its initial servitude which precluded plaintiffs recovery of damages to the 8.2 acres in question. Inabnet, 642 So.2d at 1253.
Lastly, defendants maintain that application of the public trust doctrine underscores the Secretary's duty to include such a clause in renewal leases. In particular, they argue that the inclusion of the navigation and oilfield stipulation clause promotes further harmony between the oyster lessees and the oil and gas industry, thereby enhancing the State's natural resources as a whole.
LA. CONST. art. IX, § 1 provides, in pertinent part:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy. (emphasis added).
Commenting upon this italicized portion of the constitutional article, we stated in Save Ourselves v. Louisiana Environ. Control Comm'n, 452 So.2d 1152, 1157 (La.1984):

*605 This is a rule of reasonableness which requires an agency or official, before granting approval of proposed action affecting the environment, to determine that adverse environmental impacts have been minimized or avoided as much as possible consistently with the public welfare. Thus, the constitution does not establish environmental protection as an exclusive goal, but requires a balancing process in which environmental costs and benefits must be given full and careful consideration along with economic, social and other factors.
The Legislature is vested with the legislative power of the state. LA. CONST. art. III, § 1. Unless the Constitution expressly provides otherwise, neither another branch of government nor any person holding office in one of them, may exercise the legislative power. Simply stated, no one else can legislate but the Legislature. LA.CONST. Art. II, §§ 1, 2; City of Alexandria v. Fire Fighters Ass'n Local No. 540, 220 La. 754, 57 So.2d 673 (1952). Correspondingly, if the Constitution limits the authority of the Legislature to delegate to administrative agencies, the corollary that follows is that those agencies cannot exceed the authority that the Legislature has granted them.
In the present case, the control and supervision of all wildlife of the State, including all aquatic life is charged to the Louisiana Wildlife and Fisheries Commission and LDWF. La.R.S. 36:601; 602. Moreover, as provided in La.R.S. 56:425 the Secretary is authorized to execute oyster leases and shall renew oyster leases as dictated in La.R.S. 56:428(A). Furthermore, pursuant to La.R.S. 56:6(16) the Secretary is duty-bound to protect "all lessees of private oyster bedding grounds in the enjoyment of their rights."
In light of these specifically authorized duties, we cannot agree with defendants' argument that the public trust doctrine primes statutorily defined duties. Although defendants posit their argument in terms of enhancement of the State's natural resources, they lose sight of the primary task the Legislature identified and the legislation which granted them specific powers in the performance of that task. Moreover, by seeking to include the navigation and oilfield clause in the Jurisichs' leases, as evidenced by their trial stipulation, they intend to "protect oil and gas compan[ies] from claims against [them] brought by ... subsequent oyster lesssee[s]," not the oyster lessees whose specific welfare they have been charged to protect. Such action overlooks the importance of the oyster industry as a natural resource of the State and improperly equates environmental protection with the adjudication of correlative rights between co-equal stewards of natural resources. Furthermore, defendants' position impermissibly encroaches on the function of the Legislature in the resolution of the "turf wars" between the oyster lessees and mineral lessees. In an effort to resolve those battles, the Legislature formed the Oyster Lease Damage Evaluation Board as an arm of the Department of Natural Resources to arbitrate conflicts between mineral owners and oyster leaseholders "to effect an equitable solution ... which will result in fair and predictable treatment to the oil and gas industry while assuring the oyster lessees actual compensation for damages to their oyster beds due to mineral activities." La.R.S. 56:700.10. Accordingly, we find no merit to the defendants' contention that the inclusion of this lease clause was mandated by application of the public trust doctrine.[8]

DECREE
For the foregoing reasons, the judgments of the trial court and court of appeal relative to the navigation and oil field navigation clause are reversed. This matter is *606 remanded to the trial court for entry of a preliminary injunction and for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MARCUS, VICTORY and TRAYLOR, JJ., concur in the result.
*607 
*608 
*609 
*610 PER CURIAM.[*]
Rehearing denied. Although the Court clearly stated in its opinion that its discussion of the authority of the Secretary and its ultimate holding were restricted to the inclusion of the navigation and oil field activity clause in the context of the Secretary's duty to develop the oyster industry, La.R.S. 56:425(C), in view of defendant's concern over the scope of our decision, we issue this per curiam to so reiterate.
NOTES
[*] Kimball, J., not on panel, recused. See Rule IV, Part 2, § 3.
[1] As elaborated upon more fully later in this opinion, the Secretary has sixty days from the date of the expiration of the lease to execute a renewal lease. La.R.S. 56:428(B).
[2] See Appendix "A" for sample copy of lease with the conditions. We granted writs only to consider the navigation and oil field activity clause.
[3] Contrary to the defendants' assertions in their brief in opposition to the Jurisichs' motion for reconsideration, we did not deny writs on March 12, 1999, as to the other lease clauses. Rather, we stated: "Granted (See order attached). Argument limited to issue involving Navigation and Oil Field Activity Clause."
[4] Except for reconduction provided in La.Civ. Code art. 2688 (reconduction of lease of predial estate by continued possession after expiration of the term) and 2689 (reconduction of lease of house or room by continued possession after expiration of term), renewal is a matter generally left to contractual negotiation. On the other hand, oyster lease renewal is statutorily provided and is not contingent upon a contractual provision for its existence.
[5] Although Jurisich v. Hopson Marine Serv., 619 So.2d 1111 (La.App. 4 Cir.1993) and Vujnovich v. Louisiana Wildlife & Fisheries, 376 So.2d 330 (La.App. 4 Cir.1979), the two cases relied upon by the appellate court herein, state that La.R.S. 56:428 does not grant automatic renewal rights, such is true only to the extent that LDWF must determine that the water bottoms subject to lease are no longer suitable to oyster cultivation.
[6] A stipulation between the litigants showed that in 1992 the LDWF imposed this particular clause on new leases only and that it was only after June of 1996 that this clause was included in all oyster leases, new and renewals.
[7] "[T]here are many other considerations that go into the determination of delictual liability between holders of coexisting rights to the same immovable property, such as the temporal order of the leases or other rights, the nature of the rights, the type of activities normally incidental to the use for which the rights were granted, the damage-causing party's knowledge of the existence of the damaged party's rights, the availability of alternative methods of exercising the right so as to cause little or no damage, and others. Of course the existence of these considerations and the importance thereof will vary from case to case." Inabnet, 642 So.2d at 1252.
[8] In reaching this conclusion on the application of the public trust doctrine, we note that our determination is made in the context of the Secretary's duty to develop the oyster industry and is only made relative to the inclusion of the navigation and oil field activity clause, the only clause in the oyster lease now before us.
[*] Kimball, J., not on panel, recused. See Rule IV, Part 2, § 3.