| | | |
|---|---|---|
| **MINOR CHILDREN** | * | **NO. 2024-CA-0008** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **ROMAN CATHOLIC CHURCH** | * | |
| **OF THE ARCHDIOCESE OF** | | **FOURTH CIRCUIT** |
| **NEW ORLEANS** | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-07280, DIVISION "A"
Honorable Ellen M Hazeur, Judge
**\* \* \* \* \* \***
**Judge Paula A. Brown**
**\* \* \* \* \* \***

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Karen K. Herman)


Christopher Edmunds
CHRIS EDMUNDS LAW OFFICE, LLC
4937 Hearst St., Suite 2F
Metairie, LA 70001


      COUNSEL FOR PLAINTIFF/APPELLEE


Michael L. DeShazo
Christine W. Adams
DESHAZO ADAMS, LLC
1250 Poydras Street, Suite 2450
New Orleans, LA 70113


      COUNSEL FOR DEFENDANT/APPELLANT

                       **AFFIRMED**

                       **AUGUST 20, 2024**

This is a civil dispute involving allegations of discrimination. The Appellant, Roman Catholic Church for the Archdiocese of New Orleans (the "Archdiocese"), seeks to appeal the district court's November 8, 2023 judgment, which granted a renewed motion for preliminary injunction in favor of Appellee, E.R. (the "Plaintiff").[1] That judgment enjoined the Archdiocese from asking prospective students about disabilities during the admissions process at the following schools: Academy of Our Lady High School, Archbishop Chapelle High School, Archbishop Hannan High School, Archbishop Rummel High School, Archbishop Shaw High School, Pope John Paul II High School, St. Charles Catholic High School, and St. Scholastica Academy. The court further ordered that, in order for the injunction to have effect, the Plaintiff was required to furnish security in the amount of thirty thousand dollars ($30,000.00). The Plaintiff filed an answer to the instant appeal, seeking to have the required amount of security

---

[1] As discussed more fully below, the original petition for preliminary injunction, styled as a class action, included two named plaintiffs, B.R. and E.R. A first amended petition added an additional plaintiff, D.S., and named St. Catherine of Siena Roman Catholic Church ("SCS") as an additional defendant; however, both D.S and SCS were removed as litigants in the second amended petition. On November 6, 2023, the district court issued a written judgment, which granted the Archdiocese's exception of no right of action as to B.R., but denied the exception in relation to E.R. As a result and because no class had been certified at that date, the judgment at issue here was rendered in favor of E.R. individually. Thus, when discussing that judgment, we refer to the Plaintiff in the singular.

reduced.  For the reasons that follow, we affirm the district court's November 8, 2023 judgment, insofar as it enjoins the specifically named schools controlled by the Archdiocese from asking prospective students about disabilities prior to admission, but reduce the required amount of security to five thousand dollars ($5,000.00).

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On August 15, 2022, B.R and E.R. (the "Minor Children")[2] filed a class action petition for an injunction, seeking to enjoin the Archdiocese from including questions—whether orally or in writing—that require applicants to Catholic schools under its control to disclose disabilities that the applicants might have. The Archdiocese filed an exception of nonjoinder on September 19, 2023, arguing that the Minor Children needed to name as defendants all the parish churches that operate schools in its territory because these churches are incorporated as separate legal entities under Louisiana law.

The exception came for hearing on September 21, 2023.  The Minor Children argued that they did not need to join all of the separate churches because they are wholly owned subsidiaries of the Archdiocese.  In order to demonstrate this relationship, the Minor Children sought to enter into evidence articles of incorporation for several churches that it had obtained from the Louisiana Secretary of State's website.  The district court excluded this evidence based on the premise that it had not been authenticated.  On October 5, 2023, the district signed

---

[2] In order to safeguard the anonymity of the minor children, we will use their initials throughout this opinion when referring to them individually.

a judgment, granting the Archdiocese's exception of nonjoinder, but gave the Minor Children fifteen days to amend their petition.[3]

On October 6, 2023, the Minor Children filed a third amended class action petition for injunction. The allegations were largely the same as the previous two petitions, including references to all "New Orleans-area Catholic schools" generally and the Archdiocese specifically; however, this petition included a footnote in which the Minor Children explained that "[t]his Third Amended Petition narrows the scope of relief sought to relief against only the named defendant, and such relief will not affect the interests of the allegedly separate apostolate churches." On the same day, the Minor Children filed a renewed motion for preliminary injunction. In their memorandum in support of that motion, they included a section clarifying the scope of relief sought. It stated that "[t]o remove any doubt, the relief sought in this motion does not apply to the dozens of Catholic apostolate schools that the Archdiocese indirectly controls, or 'religious order' schools."[4] Also on October 6, 2023, the Archdiocese filed peremptory exceptions of no right of action and nonjoinder of parties. The exceptions of no right of action and nonjoinder and the petition for preliminary injunction all came for hearing on October 23, 2023. The court issued a written judgment on November 6, 2023, which granted in part the Archdiocese's exception of no right of action as to B.R., but denied it as to E.R, and denied the Archdiocese's exception of nonjoinder.[5] In a separate judgment, signed on November 8, 2023,

---

[3] The notice of judgment was mailed on October 6, 2023.

[4] The memorandum also included a footnote to explain that "[t]he Archdiocese directly controls the following schools: Academy of Our Lady, Archbishop Chapelle, Archbishop Hannan, Archbishop Rummel, Archbishop Shaw, Pope John Paul II, St. Charles Catholic, St. Michael Special School, and St. Scholastica Academy."

the district court granted the renewed motion for preliminary injunction in favor of E.R., but only as to the schools directly controlled by the Archdiocese as named in the third amended petition, and ordered that E.R. furnish security for the injunction in the amount of thirty thousand dollars ($30,000.00).[6]

On November 15, 2023, the Archdiocese timely filed a motion for devolutive appeal, seeking to appeal the district court's November 8, 2023 judgment. In response, the Plaintiff filed an answer to the instant appeal, seeking to have the required amount of security reduced.

## STANDARD OF REVIEW

This Court's jurisprudence has long held that, generally, "[a]n appellate court reviews a trial court's decision on the grant or denial of a preliminary injunction under the abuse of discretion standard of review." *Deepwater Prop. Mgmt. LLC v. Citywide Dev. Servs., L.L.C.*, 23-0612, p. 3 (La. App. 4 Cir. 3/15/24), 385 So.3d 727, 730. *See also Waiters v. deVille*, 20-0556, p. 8 (La. App. 4 Cir. 12/30/20), 365 So.3d 544, 551-52. However, "[t]hat broad standard is, of course, based upon a conclusion that the trial court 'committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.'" *Meredith v. I Am Music, LLC*, 18-0659, p. 4 (La. App. 4 Cir. 2/13/19), 265 So.3d 1143, 1145-46 (quoting *Rand v. City of New Orleans*, 12-0348, pp. 3-4 (La. App. 4 Cir. 12/13/12), 125 So.3d 476, 479). "[W]here errors of law are involved, the appropriate standard of review is *de*

---

[5] That portion of the judgment granting in part and denying in part the exception of no right of action is subject to a separate appeal lodged with this Court as Case No. 2024-CA-0249.

[6] The judgment specifies that the injunction does not apply to any apostolate schools indirectly controlled by the Archdiocese, St. Michael Special School or the G.R.A.C.E. program at Archbishop Hannan High School. The judgment also specified that it did not enjoin the Archdiocese in situations in which the parents of a prospective student raised the child's health issues.

4

*novo.*" *Id.* at p. 4, 265 So.3d at 1146 (quoting *Vieux Carre Comm'n Found. v. City of New Orleans*, 17-0527, p. 8 (La. App. 4 Cir. 1/31/l8), 317 So.3d 345, 350).

Based upon the following discussion, we find no legal error in the district court's granting of the preliminary injunction. Consequently, the only issue remaining before this Court is whether the district court abused its discretion.

## DISCUSSION

In this appeal, the Archdiocese asserts three assignments of error:

1. The trial court erred in issuing a preliminary injunction that constitutes an illegal prior restraint on speech in violation of the First Amendment.

2. The trial court erred in ordering the "harsh, drastic remedy" of preliminary injunctive relief because the Plaintiff failed to establish a clear violation of either La. R.S. 46:2254 or 51:2247.

3. The trial court erred in issuing a preliminary injunction that is impermissibly vague.

We will address each of these issues in the order we find most efficient and conducive to our review, but first we will briefly examine the law applicable to this case.

*Preliminary Injunction*

"A preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo between the parties, pending trial on the main demand." *Randazzo v. Imbraguglio*, 21-0679, p. 12 (La. App. 4 Cir. 5/25/22), 343 So.3d 852, 861 (quoting *Ard v. GrrlSpot, LLC*, 19-0312, p. 14 (La. App. 4 Cir. 10/23/19), 364 So.3d 358, 366). "Preliminary injunctions can be prohibitory or mandatory." *Id.* "A mandatory injunction orders the doing of something, while a prohibitory injunction seeks to restrain conduct." *Deepwater*, 23-0612, p. 4, 385 So.3d at 731 (citing *Ard,* 19-0312, pp. 14-15, 364 So.3d at 367). "If the mover

5

seeks a prohibitory preliminary injunction, the mover must make a *prima facie* showing; yet if the mover seeks a mandatory preliminary injunction, the mover must demonstrate the elements by a preponderance of the evidence at an evidentiary hearing." *Randazzo*, 21-0679, p. 13, 343 So.3d at 862 (citing *Mercadel v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 22-0242, pp. 9-10 (La. App. 4 Cir. 4/20/22), 338 So.3d 589, 597).

"The party moving for a preliminary injunction bears the burden of proof and must show that (1) the mover will suffer irreparable injury, loss, or damage if the motion is not granted; (2) the mover is entitled to the relief sought; and (3) the mover will likely prevail on the merits of the case." *Randazzo*, 21-0679, pp. 12-13, 343 So.3d at 861 (citing *Mercadel*, 22-0242, p. 11, 338 So.3d at 597). "[A] prohibitory injunction, which simply preserves the status quo until a full trial on the merits, may be issued on a *prima facie* showing by the party seeking the injunction." *Deepwater*, 23-0612, p. 4, 385 So.3d at 730 (quoting *Ard*, 19-0312, p. 15, 364 So.3d at 367).

"Regarding the first element, irreparable injury is 'a loss sustained by an injured party which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard.'" *Randazzo*, 21-0679, p. 13, 343 So.3d at 862 (quoting *State ex rel. Dep't of Soc. Servs., Off. of Fam Support ex rel. Chesser v. Brunette*, 03-1965, p. 3 (La. App. 4 Cir. 6/2/04), 876 So.2d 244, 247). "However, if the mover seeks a prohibitory preliminary injunction, as opposed to a mandatory one, then the mover may be entitled to injunctive relief without the requisite showing of irreparable injury." *Id.* "To avail oneself of this exception, the mover must make a *prima facie* showing that the conduct sought to be restrained is unconstitutional or unlawful, i.e., it constitutes a

direct violation of a prohibitory law and/or a violation of a constitutional right." *Id.* at pp. 13-14, 343 So.3d at 862 (citing *Jurisich v. Jenkins*, 99-0076, p. 4 (La. 10/19/99), 749 So.2d 597, 599). "Thereafter, the [district] court will grant the prohibitory preliminary injunction if the [district] court determines the following requirements: (a) the conduct violates a prohibitory law (ordinance or statute) or the constitution; (b) the injunction seeks to restrain conduct, not order it (i.e., is prohibitory as opposed to mandatory); and (c) the mover has met the burden of making a *prima facie* showing that he is entitled to the relief sought." *Id.* at p.14, 343 So.3d at 862 (citing *Yokum v. Pat O'Brien's Bar, Inc.*, 12-0217, pp. 8-9, (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 81). "Further, the jurisprudence makes clear that only *direct* violations of a prohibitory law may be enjoined without a showing of irreparable harm." *Id.* (emphasis in original) (quoting *Two Canal St. Inv., Inc. v. New Orleans Bldg. Corp.*, 15-0924, p. 13 (La. App. 4 Cir. 4/20/16), 193 So.3d 278, 287).

In the case *sub judice*, the Plaintiff is seeking to enjoin the Archdiocese from questioning prospective students prior to admission—either orally or in writing—about any disabilities those students may have. The preliminary injunction does not propose to compel the Archdiocese to perform any affirmative action; therefore we find that the injunction at issue is prohibitory in nature and will analyze it according to that burden of proof.

### Assignment of Error No. 2 – Louisiana Revised Statutes 46:2254 and 51:2247

In this assignment of error, the Archdiocese avers that the Plaintiff has neither produced factual support to prove that she[7] would suffer irreparable harm in the absence of the preliminary injunction, nor has she demonstrated a direct

---

[7] In the original petition, E.R. is described as a fourteen-year-old girl.

violation of either La. R.S. 46:2254 or La. R.S. 51:2247. The Plaintiff counters that, because she is seeking a prohibitory injunction and can point to a clear violation of the law, she is relieved of having to prove irreparable harm because it is presumed.

Louisiana Revised Statutes 46:2254 provides, in pertinent part:

A. No otherwise qualified person shall, on the basis of a disability, be subjected to discrimination by any educational facility, in any real estate transaction, or be excluded from participating in, or denied the benefits of, any program or activity which receives financial assistance from the state or any of its political subdivisions.

B. In accordance with Subsection A of this Section an educational institution shall not:

* * *

(3) Make or use a written or oral inquiry or form of application for admission that elicits or attempts to elicit information, or make or keep a record, concerning the disability of an otherwise qualified applicant for admission for discriminatory purposes contrary to the provisions or purposes of this Chapter.

Louisiana Revised Statutes 51:2247 cautions:

Except as otherwise provided in this Chapter, it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in this Chapter, on the grounds of . . . disability, as defined in R.S. 51:2232.

Louisiana Revised Statutes 51:2232(10), 51:2232(5) and 51:2232(3) explain:

(10) "Place of public accommodation, resort, or amusement" means any place, store, or other establishment . . . which is supported directly or indirectly by government funds.

(5) "Discriminatory practice in connection with public accommodations" means any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of . . . disability.

(3)(a) "Disability" means a physical or mental impairment that substantially limits one or more of the major life activities of the individual, a record of such impairment, or being regarded as having such an impairment. For purposes of all laws which incorporate by reference, apply to, or rely for meaning upon the term disability as defined herein, the terms used in this definition have the following meanings:

(i) "Major life activities" includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(ii) "Mental impairment" means any mental or psychological disorder, such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(iii) "Physical impairment" means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

First, the Archdiocese argues that the Plaintiff has not offered into evidence any proof that the Archdiocese receives financial assistance from the State of Louisiana (the "state") or one of its political subdivisions; therefore, it asserts, the prohibitions against discriminatory conduct found in La. R.S. 46:2254 and La. R.S. 51:2247 are inapplicable.

At the October 23, 2023 hearing on the petition for preliminary injunction, the district court excluded evidence offered by the Plaintiff to demonstrate that the Archdiocese receives financial assistance from the state or one of its political subdivisions. In sustaining the Archdiocese's objection to the evidence, the district court reasoned that the evidence had not been authenticated. Our review of the record reveals that, although the Plaintiff provided letters purporting to be from the Louisiana Department of Education (the "DOE") together with printouts showing financial assistance received from the DOE by the Archdiocese, it solely relied on

an affidavit by Plaintiff's counsel to authenticate those documents. We cannot say the district court abused its discretion in excluding these documents on that basis.

However, for purposes of our review, this Court has reiterated time and again that we are empowered to take judicial notice of government websites. *See Breston v. DH Catering, LLC*, 23-0460, p. 25, n.2 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 968 (quoting *Vescovo v. Air & Liquid Sys. Corp.*, 23-0116, p. 10, n.7 (La. App. 4 Cir. 11/15/23), 377 So.3d 759, 768). *See also State in Interest of K.B.*, 23-0409, p. 9, n.12 (La. App. 4 Cir. 9/26/23), 372 So.3d 864, 872–73). Our review of the DOE's website discloses that at the time the Plaintiff's petition was filed in 2022, almost all of the Catholic schools directly owned and operated by the Archdiocese had students participating in a program in which the DOE assisted in paying tuition to the Archdiocese on behalf of those students.[8] The Plaintiff has also directed our attention to a report generated in 2021 that reflects the exact amount of funding those schools received from the DOE.[9] Accordingly, we find that the Archdiocese, as a recipient of state government funding, is subject to the mandates laid out in both La. R.S. 46:2254 and La. R.S. 51:2247.

*Louisiana Revised Statutes 46:2254*

The Archdiocese avows that, even conceding for the sake of argument that it receives financial assistance from the state or any of its political subdivisions, the

---

[8]Specifically, those schools are: Academy of Our Lady High School, Archbishop Chapelle High School, Archbishop Hannan High School, Archbishop Rummel High School, Archbishop Shaw High School, Pope John Paul II High School and St. Charles Catholic High School.

*See* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.louisianabelieves.com/docs/default-source/school-choice/2022-2023-tuition-donation-credit-program-annual-report.pdf?sfvrsn=9e686118_2

[9] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://louisianabelieves.com/docs/default-source/operations/eans-allocation-(final)-4-28-21.pdf?sfvrsn=b33f6718_4

Plaintiff falls short of clearly proving that the questions it posed about prospective students' disabilities were asked for a discriminatory purpose as provided for in La. R.S. 46:2254. It argues that its intent was simply to assess the prospective students' needs in order to determine whether that particular school would be able to meet those needs. This unilateral determination, according to the Plaintiff, displays the very essence of a discriminatory purpose because its treats those with disabilities less favorably during the admissions process. Furthermore, the Plaintiff argues, in order to determine whether an activity is discriminatory, intent is irrelevant if the actual effect of the activity deprives an individual of an equal opportunity. We find the Plaintiff's arguments to be persuasive.

Our research finds that there is a scarcity of Louisiana jurisprudence interpreting La. R.S. 46:2254 and none that defines or examines the meaning of "discriminatory purpose." Nevertheless, "[i]t is axiomatic that when statutory language is troublesome, i.e. ambiguous, it falls to the courts to parse their meaning." *Lepine v. Dep't of Wildlife & Fisheries*, 22-0160, p. 5 (La. App. 4 Cir. 10/5/22), 350 So.3d 988, 992. "The starting point in the interpretation of any statute is the language of the statute itself." *Id.* (quoting *Whitley v. State ex rel. Bd. of Sup'rs of La. State Univ. Agric. Mech. Coll.*, 11-0040, p. 6 (La. 7/1/11), 66 So.3d 470, 474). "Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent." *Id.* (quoting *Pierce Founds., Inc. v. Jaroy Constr., Inc.*, 15-0785, p. 6 (La. 5/3/16), 190 So.3d 298, 303). However, "[w]hen the wording of a section of the revised statutes is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." *Id.* at p. 6, 350 So.3d at 992 (quoting Whitley, 11-0040, p. 6, 66 So.3d at 474). In this instance, the legislative intent of La.

46:2254 could not be clearer. The short title of the chapter in which La. R.S. 46:2254 is found is referred to as the "Civil Rights Act for Persons with Disabilities".[10] The purpose of this chapter is found in La. R.S. 46:2252:

> A. The legislature hereby finds and declares that the state has the responsibility to act to assure that every individual within the state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, or intolerance not only threatens the rights and proper privileges of its inhabitants but menaces the institutions, the foundation of a free democratic state, and threatens the peace, order, health, safety, and general welfare of the state and its inhabitants.

> B. The opportunity to obtain education, housing, and other real estate and full and equal utilization of public services and programs without discrimination on the basis of a disability is a civil right.

As the Plaintiff points out, in ascertaining the meaning of "discriminatory purpose," "[i]t has long been this State's tradition for Louisiana courts to look to federal case law for guidance in instances where our laws are patterned after or based upon federal law." *State ex rel. Olivieri v. State*, 00-0172, p. 15 (La. 2/21/01), 779 So.2d 735, 744. Originally enacted as the "Civil Rights Act for Handicapped Persons" by Acts 1980, No. 665, § 1, this set of statutes was promulgated in an effort to incorporate concepts of Title VII of the U.S. Civil Rights Act of 1964 into Louisiana law. *See* Victoria White, *Employment Disability Discrimination in Louisiana: How to Better Protect the Disabled Employee*, 52 Loy. L. Rev. 917, 931 n.91 (Fall 2006). Therefore, looking to federal jurisprudence, we find that if a party alleged to be in violation of discrimination based on a disability can articulate a non-discriminatory purpose for its actions, the burden shifts to the plaintiff to rebut the neutrality of that purpose. This rebuttal

---

[10] *See* Louisiana Revised Statutes 46:2251, which provides:

This Chapter may be cited as the "Civil Rights Act for Persons with Disabilities".

may be accomplished by offering proof that the violation is merely a pretext for discrimination by pointing out evidence of disparate treatment. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 483 (5th Cir. 2023).

The Plaintiff asserts that evidence of disparate treatment by the Archdiocese for those prospective students with disabilities can be found in the affidavit of Katherine Shea ("Ms. Shea"), the Archdiocese's Associate Superintendent for Education Formation and Accessibility. In this affidavit, Ms. Shea explained that "[o]utreach is made in order to determine if the school can meet the needs of the child; a school cannot determine whether they can meet a child's educational needs if they do not know what those needs are." We find from our review of the record that, at the very least, the additional requirements imposed prior to admission upon prospective students with disabilities presents evidence of disparate treatment.

*Louisiana Revised Statutes 51:2247*

Louisiana Revised Statutes 51:2247 is included in Chapter 38 of Title 51, more commonly known as the Louisiana Human Rights Act. The first statute in the chapter, La. R.S. 51:2231, explains that "[i]t is the purpose and intent of the legislature by this enactment to provide for execution within Louisiana of the policies embodied in the Federal Civil Rights Act of 1964, 1968, and 1972." When we read the plain language of La. R.S. 51:2247 together with La. R.S. 51:2232, we come to the same conclusion we reached in our examination of La. R.S. 46:2254. However, these statutes are even more explicit in their language. First, it is plain to us that, based on our previous discussion, the Archdiocese qualifies as a place of public accommodation by virtue of the state funding it receives. Next, La. R.S. 51:2232(5) informs that the only requirement for demonstrating a discriminatory practice is to show that it somehow engages in any

13

direct or indirect act or practice of distinction or any other act or practice of differentiation in the treatment of a person or persons because of a disability. Here, the Plaintiff has made a clear *prima facie* showing that pre-admission students with disabilities are treated differently by the Archdiocese.

As such, we find the factors necessary for granting a motion for a preliminary injunction as laid out by this Court in *Randazzo* have been met: (1) the Archdiocese's conduct is in direct violation of La. R.S. 46:2254 and 51:2247; (2) the requested injunction seeks to restrain the Archdiocese's conduct—therefore, it is prohibitory; and (3) the Plaintiff has made a *prima facie* showing they are entitled to relief.[11]  Because we find the Archdiocese's conduct to be in direct violation of both La. R.S. 46:2254 and 51:2247, it is unnecessary that the Plaintiff present any evidence of irreparable harm at this stage of the proceedings.

Additionally, the Archdiocese essentially makes an argument for mootness. It points out that for the eight schools in question, any questions pertaining to disabilities have already been removed from the application forms, and that it has recommended that they be removed from the applications of any schools operated by the church parishes.  We find this to be unpersuasive.  As we noted above, the purpose behind the issuance of a preliminary injunction is to maintain the status quo between the parties.  There is nothing in the record to reflect that, in the event the injunction were dissolved, the Archdiocese would not simply add the questions back to the application forms.  Furthermore, the injunction also constrains the Archdiocese from orally initiating discussions about potential disabilities with prospective students.

This argument is without merit.

---

[11] *See Randazzo*, 21-0679, p.14, 343 So.3d at 862.

### *Assignment of Error No. 3 – Vagueness*

The Archdiocese argues the preliminary injunction is overly broad and vague, pointing out, for instance, that such terms as "prospective student" and "disability" are not defined, and that it is unclear what constitutes a "situation where parents bring up the child's health." Conversely, the Plaintiff maintains that the judgment is not vague, and points out that both parties drafted proposed judgments, but that it was the Archdiocese's proposal which was largely adopted by the district court. In fact, the Plaintiff notes that it was the Archdiocese who insisted that the word "health" be inserted into the judgment, when the Plaintiff's proposal simply used the decree that "[n]othing in this order shall be construed to prohibit the Defendant from answering questions asked by the parents." We agree with the Plaintiff.

The corresponding definitional statute for the Civil Rights Act for Persons with Disabilities, La. R.S. 46:2253, provides that:

> (12) "Person with a disability" means any person who has an impairment which substantially limits one or more life activities or (a) has a record of such an impairment or (b) is regarded as having such an impairment.

Additionally, two of the Archdiocese's own witnesses, RaeNell Houston—the Executive Director and Superintendent of Catholic Education and Faith Formation for the Archdiocese—and Ms. Shea—both refer to pre-admission students as "prospective students;" therefore, we find the Archdiocese's position to be at odds with their own administrative staff's understanding of the phrase.

Because we find that the Plaintiff has made a *prima facie* showing that the Archdiocese's questions have a discriminatory purpose, we find that the proper

remedy for clarifying any potential ambiguities in the preliminary injunction is modification rather than dissolution, as provided for in La. C.C.P. art. 3607:

> An interested person may move for the dissolution or modification of a temporary restraining order or preliminary injunction, upon two days' notice to the adverse party, or such shorter notice as the court may prescribe. The court shall proceed to hear and determine the motion as expeditiously as the ends of justice may require.
>
> The court, on its own motion and upon notice to all parties and after hearing, may dissolve or modify a temporary restraining order or preliminary injunction.

As the Plaintiff points out, the Archdiocese could file such a motion to modify even while the matter is on appeal. *See Forrester v. Bruno*, 19-0359, pp. 7-8 (La. App. 4 Cir. 11/6/19), 282 So. 3d 1163, 1169 (explaining that a pending appeal does not divest the district court of jurisdiction for a modification of an injunction pursuant to La. C.C.P. art. 3607).

This argument is without merit.

***Assignment of Error No. 1 – Prior Restraint of Speech***

Finally, the Archdiocese argues that the preliminary injunction is an unconstitutional prior restraint on speech both for it and its employees—categorizing this speech as unquestionably religious because it relates to the operation of its Catholic schools. In support, the Archdiocese offers the case of *Livingston Par. Sch. Bd. v. Kellett*, 22-1240 (La. App. 1st Cir. 05/18/23), 368 So.3d 621, for the propositions that prior restraint on free speech is presumed to be constitutionally invalid and that words do not lose First Amendment protection until they are deemed conclusively illegal after a trial on the merits. The Plaintiff counters that the facts of *Livingston* are distinguishable and inapposite to the case *sub judice*. Moreover, she maintains, the Archdiocese has not challenged the constitutionality of La. R.S. 46:2254, which already expressly prohibits the

16

Archdiocese from posing questions about disabilities to prospective students to be used for a discriminatory purpose. We find the Plaintiff's assertions persuasive.

In *Livingston*, a mother secreted electronic devices on her child that she used to intercept communications of faculty and students at the child's school. The mother shared these communications and her own critiques of the school board on a live web blog and other social media. The school board then sought and obtained a preliminary injunction against the mother, which enjoined her from making or publishing and/or from engaging in any activity to make, disseminate, publish or broadcast defamatory, slanderous, libelous, frivolous and/or fraudulent claims or statements concerning the school board, its faculty, staff and employees. The court noted that because the mother had raised the issue of her First Amendment rights at the preliminary injunction hearing, the court was first obligated to determine whether the injunction had been issued erroneously. Ultimately, the court determined that the injunction was erroneously granted because there had been no judicial determination that her speech was defamatory.

The circumstances confronting the *Livingston* court do not exist in the matter before us. Our review of the record reveals that the Archdiocese did not raise any constitutional challenges to the district court; it has only raised the issue on appeal. Further, the Archdiocese concedes in its reply brief to this Court that it is not seeking to challenge the constitutionality of either La. R.S. 46:2254 or 51:2247; rather, it believes the preliminary injunction itself to be violative of the constitution. We find this argument to be misplaced.

It is a well-settled principle that this Court will not consider constitutional arguments raised for the first time on appeal, with only four very narrow exceptions to that rule:

17

(1) when a statute attempts to limit the constitutional power of the courts to review cases;

(2) when the statute has been declared unconstitutional in another case;

(3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or

(4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record.

*Equity Trust Co., FBO 200267986 (59.51%) & 200267988 (40.49%) v. Thorrick*, 23-0779, pp. 8-9 (La. App. 4 Cir. 7/10/24), ___ So.3d ____, ____, 2024 WL 3354968, at *4; *See also Sunset Harbour, L.L.C. v. Bush*, 23-0156, p. 13 (La. App. 4 Cir. 9/26/23), 372 So.3d 855, 863; *Chaumont v. City of New Orleans*, 20-0017, p. 4 (La. App. 4 Cir. 6/3/20), 302 So.3d 39, 45-46; *Unwired Telecom Corp. v. Par. of Calcasieu*, 03-0732, pp. 6-7, n.5 (La. 1/19/05), 903 So.2d 392, 399.  Finding that none of these exceptions are applicable in the case *sub judice*, we pretermit discussion of the merits of the constitutional issue raised here for the first time.

## ANSWER TO APPEAL

The Plaintiff insists that the district court abused its discretion when it ordered that security be furnished for the preliminary injunction in the amount of thirty thousand dollars ($30,000.00).  We agree with the Plaintiff.

At the October 23, 2023 hearing that granted the preliminary injunction and set the security amount, the Plaintiff argued that the district court had the discretion to dispense with requiring any security at all.  In opposition, the Archdiocese averred that security for a preliminary injunction is mandatory under La. C.C.P. art. 3610, and that because La. C.C.P. art. 3608 allows for an award of attorneys' fees, the court should consider that expense in setting the amount of security.  We

find flaws in both of these arguments. Louisiana Code of Civil Procedure Article 3610 mandates, in part:

> A temporary restraining order or preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained.

Louisiana Code of Civil Procedure Article 3608 provides:

> The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.

Reading the plain language of La. C.C.P. art. 3610, that an injunction shall not issue unless security is furnished, we find the district court did not have any discretion to completely waive the requirement for security as requested by the Plaintiff. This Court explained in *Everett v. Air Products and Chemicals, Inc.*, that "[u]nder well-established rules of interpretation, the word 'shall' excludes the possibility of being 'optional' or even subject to 'discretion,' but instead means 'imperative, of similar effect and import with the word 'must.'" 22-0539, p. 10 (La. App. 4 Cir. 5/2/23), 382 So.3d 216, 224 (quoting *Auricchio v. Harriston*, 20-01167, p. 4 (La. 10/10/21), 332 So.3d 660, 663).

When setting the amount of security, the district court noted that, at that time, the case had been pending for over a year. This comment appears to show that the district court accepted the Archdiocese's argument that attorneys' fees should be considered in setting the security. We disagree with this reasoning. This Court outlined in *Yokum* that while an award of attorneys' fees is "left to the discretion of the court," it is "only awarded after the court finds that the

19

preliminary injunction was improperly issued." 12-0217, p. 12, 99 So.3d at 83. There has been no such finding in this case. Further, there is no record evidence to demonstrate what costs, if any, the Archdiocese has incurred or might incur in the future, or that it will suffer any damages from not asking prospective students about potential disabilities. Accordingly, we find the district court abused its discretion in this instance. Applying our reasoning utilized in *Yokum*, where that defendant did not submit any affidavit evidence to the district court, we find, when confronted with the facts now before us, that five thousand dollars ($5,000) is a more reasonable amount for security.

## CONCLUSION

For the foregoing reasons, we find the district court did not abuse its discretion when it granted the Plaintiff's petition for a preliminary injunction; therefore, we affirm the district court's November 8, 2023 judgment, insofar as it enjoins the specifically named schools controlled by the Archdiocese from asking prospective students about disabilities prior to admission, but reduce the required amount of security to five thousand dollars ($5,000.00).

**AFFIRMED**